Argued September 22, affirmed November 1, reconsideration denied December 8, 1976, petition for review denied January 11, 1977

In the Matter of the Marriage of
LAIRD, *Respondent,*
*and*
LAIRD, *Appellant.*
(No. 91540, CA 6278)
555 P2d 814

*Bruce W. Williams,* Salem, argued the cause and filed the brief for appellant.

*Myron L. Enfield,* Salem, argued the cause for respondent. With him on the brief was Murley M. Larimer, Stayton.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

This is an appeal from a decree of dissolution of marriage. The appellant-wife contends that she should be granted a greater portion of property and that the respondent-husband should be required to pay more than $400 per month in support.

The parties were married in August 1942, with neither owning any substantial assets. At the time of the hearing below, the husband was 61 years old and the wife was 59. No children were born to the couple during the marriage.

At the time of the marriage the husband was in the U.S. Army. After ventures into the wholesale petroleum business and the hotel and furniture trades, in 1955 he opened an insurance agency in Stayton. On January 1, 1973, he merged his agency with another insurance agency, also in Stayton. As a consequence of this merger, husband received a $31,000 promissory note from the latter agency and, in return for ten shares of its stock, gave it a $33,700 promissory note. Husband's ten shares constitute one-half of the outstanding stock. The only testimony below as to the current value of this stock was that husband valued it at $33,700. Lacking any other specifics on whether this valuation does or does not accurately reflect husband's interest in the agency we must accept this valuation as correct.

Husband is now president of the agency, with a salary of $1,500 per month excluding bonuses and the use of an automobile. Wife has not been employed since 1958. Prior to that time she had owned and operated a beauty shop. Wife is a registered insurance agent, but apparently the only use to which her license has been put was to provide husband with the means of avoiding a requirement of his agreement with an insurance company he formerly represented that he not represent other insurance companies.

In 1960 the parties moved into their present home

in Mill City. The home is situated on land with 200 feet of frontage on the Santiam River. Wife values the home and property at $31,150; husband thinks it worth $60,000. The parties also own an undeveloped tract adjoining the home, with 400 feet of river frontage, known as the river property. Wife values this property at $9,210; husband values it at $40,000. Though these valuations differ greatly, both reflect approximately a $20,000 difference between the value of the undeveloped land and the land with the house. Wife also has one-half interest in two rental houses situated on 22 acres of land in and adjoining Mill City. She values this interest at $19,000; husband values the interest at $30,000. One of the two houses on this lot is now being rented for $75 per month.

The other major assets owned by the parties are a share of stock in a golf club, a small plot of land, one-half interest in some bonds and certificates and the personal property in the Mill City home. The combined value of these assets is between $6,000 and $8,000, depending on the valuation attached to the personal property in the Mill City home.

Approximately ten years ago the parties separated, with wife remaining in the Mill City home. Since that time husband has paid the mortgage, insurance and taxes on the Mill City home, all of wife's expenses and $400 per month to wife.

Husband is apparently in good health, but wife is not. She must undergo a gall bladder operation immediately. She also has suffered from an 80 percent occlusion of a femoral artery since 1969, though there was conflicting evidence of the extent of the resulting disability. A letter from one physician recommended an arterial transplant, while a letter from another doctor noted that wife's "symptoms are minimal and there is no indication for operation at this time." Wife has sought to implement her doctor's advice that exercise would aid treatment of the arterial occlusion

by making frequent trips to and around a golf course. Wife also is hard of hearing.

The circuit court awarded all property to wife, excepting the river property, the insurance agency and husband's savings and checking accounts. The trial judge also ordered husband to assume all liabilities then existing against the assets of either party, to pay attorney fees of $750 and to pay wife $400 per month in support.

According to our calculations the circuit court's decree allocated to the wife approximately 60 percent of the property and over 40 percent of the income produced by the parties. Thus, the wife received the "long half" of the property and husband "the long half" of the income. *See Wirthlin and Wirthlin,* 19 Or App 256, 527 P2d 147 (1974). We have approved similar divisions many times in the past. *See, e.g., Miller and Miller,* 21 Or App 253, 534 P2d 512 (1975); *Phillipakis and Phillipakis,* 14 Or App 377, 513 P2d 529 (1973); *Erpelding v. Erpelding,* 6 Or App 333, 487 P2d 1406 (1971). Given the age of the parties, the contribution of each to the marital assets and the earning capacity and health of each party, the property division and level of support payments seem eminently reasonable, and we therefore see no reason to disturb the decree.

Affirmed.