Argued March 24, affirmed as modified April 25, 1977

# In the Matter of the Dissolution of the Marriage of
## RUIZ, *Respondent,*
### *and*
## RUIZ, *Appellant.*
### (No. 420 593, CA 6968)
563 P2d 168

Raymond J. Conboy, Portland, argued the cause for appellant. With him on the brief was Pozzi, Wilson & Atchison, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief were Mark H. Wagner and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before Thornton, Presiding Judge, and Tanzer and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

The wife asserts two assignments of error in her appeal of the dissolution of marriage decree. The first assignment challenges the division of property. She does not challenge the order for spousal support. In the second assignment she contends the trial court erred in not granting her motion to set aside or modify the decree of dissolution.

The motion to set aside or modify the decree was in effect a motion to reopen the case for further evidence. The trial was on August 6, 1976 at which time the trial court announced its decision. The final decree was entered on August 23. The wife filed her motion on September 2. The grounds for the motion were that the wife's valuation testimony of $360,000 on the trailer park owned by the parties did not include the value of 9.05 acres of unimproved property which was part of the same parcel,[1] and that the unimproved property had substantial value due to a change in zoning of which the wife was not aware at the time of trial. She further contends that the husband was aware of the change in the zoning and had a duty to inform the court. At trial the husband had accepted the wife's valuation of the trailer park property. In effect she is contending she made a mistake in her valuation. The trial record indicates her valuation included the entire trailer park. The rezoning occurred prior to trial and was a matter of public record.

Although this is an equity proceeding, the applicable rule is the same as the statutory rule governing motion for a new trial in actions at law. A motion for a new trial shall not be granted unless the moving party can show that with reasonable diligence the new evidence could not have been discovered prior to trial. *See* ORS 17.610(4). In *Waldow v. Waldow,* 189 Or 600, 221 P2d 576 (1950), the court was presented with a

---

[1] According to the wife's affidavit in support of the motion, the husband had applied on April 28, 1976 to have the parcel partitioned. However, there is no evidence that the partition had been granted.

[ 275 ]

similar motion to reopen the case which was denied. The court stated:

"This is not a technical matter. The enforcement of just rules governing orderly procedure is of the essence, and the disregard of such rules by counsel or court imperils due process itself. It is always possible for a litigant acting in good faith and having important evidence which has not been presented to the court, to move to reopen the case for further testimony at any time prior to the signing of the decree, and the court has power in its discretion to allow such a motion. But to allow a party to withhold evidence and gamble on a favorable decision of the court, and then when a final decree, unsatisfactory to him, has been entered, to move for a new trial or for a vacation of the decree in order to do what he could, and should have done earlier, would be to open the door to delay, confusion, and at times to the tactics of the pettifogger. If the trial court were to permit such tactics, the result would be the disruption of rules of procedure which have been honored for generations. * * * The short answer to the plaintiff's contention on the motion for new trial is that the affidavits contain nothing that occurred since the decree. The denial of the motion for a new trial would not have been an appealable order, even if made in an action at law under the provisions of statute. O.C.L.A. §§ 5-801 and 5-802. Even in an action at law where the statute authorizes motions for new trial, the denial of such a motion not based on anything occurring after the judgment, presents nothing for the consideration of this court. *See Parmentier v. Ransom et al.,* 179 Or. 17, 169 P. 2d 883 [1946]. The rule applies with greater force in an equity suit in which motions for new trial are not authorized." 189 Or at 605-06.

*Waldow* was decided prior to the enactment of ORS 1.055[2] which was construed in *Miller v. Miller,* 228 Or

---

[2]ORS 1.055 provides:

"(1) A term of court is a period of time appointed for the convenient transaction of the business of the court. The existence or nonexistence of a term of court has no effect on the duties and powers of the court.

"(2) Notwithstanding that an act is authorized or required to be done before, during or after the expiration of a term of court, it may be done within a reasonable period of time."

301, 365 P2d 86 (1961), to be statutory authorization for a motion for new trial in equity proceedings. In *Miller* the court went on to say:

> "In the case of *Waldow v. Waldow,* supra, decided prior to the enactment of ORS 1.055, a party sought to reopen a divorce on the basis of new evidence. * * * The affidavits in the *Waldow* case contained allegations of conduct which, if proven at the trial, might have influenced the trial court to reach a different result. The same may be said for the affidavits in the case at bar. We warned in the *Waldow* case that strong reasons of policy mitigate against reopening a case where there has been a lack of due diligence in producing all available evidence at the trial. In the analogous case of a motion for a new trial in an action at law under ORS 17.610(4), diligence is mandatory. [citing case]" 228 Or at 305.

The trial court properly denied the motion. The wife had ample opportunity to discover before trial all the relevant evidence concerning the value of the property.

■ The trial court, however, erred in the division of the property.

The parties were married 30 years and have an emancipated child. The husband is 57. Until April 1976 he was employed as service manager for an auto dealer with a gross monthly salary plus commissions in excess of $1,600 per month. At that time he advised his employer that he no longer wanted the responsibility of being service manager and took a voluntary demotion to assistant service manager reducing his income approximately $500 per month.

■ In dividing property, as in awarding spousal support, we are concerned with the relative earning capacities of the parties. In most cases we look to the parties' present earnings as the best indicator of earning capacity. However, here the evidence of the husband's earnings as service manager are a relevant

consideration because his present reduced earnings are the result of his voluntary action.[3]

In contrast with the husband's situation, the wife's earning capacity is in doubt. The trial court concluded that temporary spousal support of $400 per month for three years would give the wife "an opportunity to * * * seek further education or retraining or go immediately into the job market and hopefully find some interesting and rewarding work." She is an intelligent woman with some business acumen and holds a realtor's license. However, the trial court's employment expectations for her appear unrealistic. She is 61 years of age and in poor health, suffering from hypoglycemia and severe visual impairment. Her opthomologist testified in response to a question "Is she employable" — "Well, I think that would depend upon the kind of employment she would be doing, she would be capable of doing. A blind person can work." Her real estate license is in an inactive status and she has never worked as a real estate broker or salesman.

■ The following is a summary of the division of property decreed by the trial court together with the valuations which we find supported by the weight of the evidence.[4]

---

[3]The husband testified that the reason for his voluntary demotion was that he needed more time to manage and maintain the mobile home park owned by the parties. The weight of the evidence is that the husband's reasons for taking a voluntary demotion were personal. The parties had owned and operated the trailer park for several years while he held his service manager position.

[4]The wife was also awarded the automobile which had a value of $1,000. We have not included this in the summary because the husband is supplied an automobile by his employer.

| Property | Husband | Wife |
|---|---|---|
| Residence (appraised value $44,450 less mortgage of $16,750) | | $ 27,700 |
| Mobile home park located in Benton County ($360,000 less $180,000 indebtedness) | $130,000 | $50,000 judgment lien payable with interest at the rate of $5,000 per year. |
| Bank account in Corvallis | 10,400 | |
| Proceeds including interest from sale of real property at 122nd Avenue ($19,000 + $2,880 interest) | | 21,880 |
| New Mexico property | | 5,100 |
| Washington County property | | 600 |
| California property | | 1,560 |
| Oregon Trail stock | | 2,608 |
| Far West savings account | · | 11,790 |
| Life insurance | | 5,000 |
| Miscellaneous personal property | 1,200 | 1,520 |
| | $141,600 | $127,758 |

The only witness to testify as to the value of the properties other than the residence was the wife. The husband accepted all of the wife's valuations given at the trial, except counsel for the husband attempted to impeach her valuation of the New Mexico, California and Washington County properties, relying on her deposition where she had testified to higher values. She explained that the discrepancies resulted from inadequate information at the time of her deposition and supported her valuations at trial with documentation. The husband testified that he had no knowledge as to the value of these properties. We give great

[ 279 ]

weight to the trial court's findings where its opportunity to observe a witness is important in determining credibility. *McCoy and McCoy,* 28 Or App 919, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977). In this case we believe the documentation supporting the wife's testimony[5] is more probative of her credibility than observing her demeanor. We adopt the wife's valuations.

The trial court stated that in a case of this kind it attempts to equally divide the property. We concur except that this is also an appropriate case considering the disparate earning capacities of the parties to award permanent spousal support to the wife. *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, Sup Ct *review denied* (1974).

The wife does not appeal the temporary spousal support and thus we are reluctant to disturb, if not precluded from disturbing, that part of the decree. Our task in any event is to the extent possible to place both parties in a self-sufficient status commensurate with the marriage. This requires us to consider spousal support in making the property division. In making a division of property, we must also give consideration to the possible need for disentangling the financial affairs of the parties. In *Slauson and Slauson,* 29 Or App 177, 562 P2d 604 (1977), we stated:

> "* * * [I]n dividing the property the dissolution decree should seek to disentangle the parties' financial affairs and make them free from each other's interference. The friction resulting from the unsuccessful marriage partnership almost inevitably makes continued business association untenable. *See Pence and Pence,* 25 Or App 667, 550 P2d 754 (1976); *Adams and Adams,* 22 Or App 287, 538 P2d 954 (1975). While it is common in marriages of this long duration to attempt an equal division of property, there is 'no hard and fast formula.' *Demke and Demke,* 75 Adv Sh 3969, 3971, 23 Or App 403, 542 P2d 943 (1975). Property division and spousal

---

[5]The documentation included proof of the assessed valuations for the Washington County and California properties and the statement of a New Mexico realtor regarding the value of the New Mexico property.

support should be considered together in attempting to put the two parties in a position so that they may leave the marriage in a self-sufficient status. * * *"

Thus we would ordinarily be reluctant to leave these parties in a position where they continued as business partners in the mobile home park and as joint tenants of other real estate. However, this case presents unique circumstances. The parties have been separated since July 1973. Until the time of the decree they continued to jointly manage and operate the mobile home park. The husband supervised the resident manager and performed maintenance work. The wife was the bookkeeper and maintained the business bank account. The acquisition of all of these properties was the result of the joint business acumen and efforts of the parties. This may not be a propitious time to sell the properties and the parties should be left in a position where they can make that decision, providing they can agree. Accordingly, we modify the trial court's decree to provide that the mobile home park together with the New Mexico, Washington County and California properties be awarded to the parties as joint tenants. If the parties are unable to work together or either party wishes to sell any or all of the properties, he or she may petition the trial court and the sale shall be conducted under that court's supervision. The husband shall have the income from and shall pay all expenses for the trailer park to the time of the mandate. The wife shall pay the husband $10,940 which is half the proceeds from the sale of the 122nd Avenue property. The husband shall retain his life insurance policies and the wife shall not have any interest therein.[6] This modification results in the wife getting a larger share of the property, which is warranted considering her age and present health, the disparate earning capacity of the parties, the limited spousal support and other circumstances.

Affirmed as modified. No costs to either party.

---

[6]The indication in the record that it may be difficult or impossible to transfer the policies to the wife is one factor in our decision.