Argued May 21, affirmed as modified August 20, 1979

# In the Matter of the Marriage of
## GLATT,
*Respondent,*
*and*
## GLATT,
*Appellant.*

(No. 103601, CA 12190)

598 P2d 1237

Argued and submitted May 21, 1979.

Edward L. Clark, Jr., of Clark, Marsh & Lindauer, Salem, argued the cause and filed briefs for appellant.

Robert W. Muir, Salem, argued the cause for respondent. With him on the brief were J. Philip Parks, and Miller & Parks, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges, and Peterson, Judge Pro Tempore.

PETERSON, J., Pro Tempore.

**PETERSON, J.,** Pro Tempore.

Wife appeals from a dissolution of marriage decree contending the property division was inequitable.

The parties, both in their early fifties, were married for 28 years and have an emancipated daughter. Husband and wife have been employed throughout the marriage. Husband has worked as field representative for General Foods, as an assistant director for the Oregon Department of Agriculture, and, most recently, as a lawn seed salesman for Turf Seed. Husband earned approximately $30,000 a year when he left the Department of Agriculture. As a seed salesman he now earns $1,800 per month but his prospects for future salary increases are good. Wife has worked as a public school teacher for all but two of the 28 years of marriage. She earned approximately $16,000 in 1977 and her income has risen slowly but steadily over the years. Both parties are currently employed and are in good health.

The following chart details the assets of the marriage and their distribution by the trial court.[1]

*TO HUSBAND:*

| Item No. | Description | Valuation |
|---|---|---|
| 1. | Personal effects, hunting and fishing equipment | |
| 2. | Husband's retirement | $18,000.00 |
| 3. | Husband's checking and savings accounts | 450.00 |
| 4. | Husband's life insurance policies | 13,558.40 |
| 5. | Chevrolet auto | 5,000.00 |
| 6. | 1/2 of $30,000 in United States Government notes | 15,000.00 |
| 7. | United States savings bonds | 800.00 |
| 8. | Multiplex Salem partnership | 5,000.00 |
| 9. | 54.29-acre farm and equipment ($135,000 value minus $40,000 liability equals $95,000 net value) | 95,000.00 |

---

[1] Valuation of the assets was without substantial dispute, with but two exceptions, items 9 and 10. In the chart, items 9 and 10 are valued consistent with husband's testimony. Wife disputes this valuation.

| 10. | Husband's 1/5 interest in Ray Glatt estate consisting of three parcels of land | 60,782.00 |
| 11. | Various tools and miscellaneous other items | _____ |
| | Total value | $213,590.40 |

*TO WIFE:*

| Item No. | Description | Valuation |
|---|---|---|
| 21. | Personal effects | _____ |
| 22. | Wife's retirement | $ 9,000.00 |
| 23. | Wife's bank accounts | 722.00 |
| 24. | Wife's Credit Union and savings account | 9,113.00 |
| 25. | Wife's annuity and investors variable payment fund | 5,100.00 |
| 26. | Wife's life insurance policies | 500.00 |
| 27. | 1971 Ford Galaxie | 1,350.00 |
| 28. | 1/2 of $30,000 in United States Government notes | 15,000.00 |
| 29. | Family home | 75,000.00 |
| 30. | Furnishings in family home | 9,000.00 |
| 31. | Lincoln County lot | 10,000.00 |
| 32. | Two Abiqua lots | 25,000.00 |
| 33. | Powers Creek lot | 7,500.00 |
| 34. | "69" Real Estate Inc. stocks and stock options | 50,000.00 |
| 35. | Cashier's check | 5,000.00 |
| 36. | Various tools and other miscellaneous items | |
| | Total Value | $222,285.00 |

On appeal, wife contends that we should modify the decree to award her the 54-acre farm property because the trial court's division of the property was inequitable. She asserts that the trial court erred in its valuations of items 9 and 10. She also argues that the court failed to properly take into account the greater earning power of husband in relation to wife and the absence of any request for spousal support. She requests that she be given an equalizing judgment in a lump sum payable within a reasonable period, secured

by a lien on the farm. Alternatively, she requests that we award both parties an undivided one-half interest in the farm property.

Husband responds that awarding the farm to wife, without wholesale redistribution of the other assets, would create an inequity far greater than allegedly now exists. He contends that creation of a tenancy in common is unworkable and contrary to Oregon case law. He asserts that an equalizing judgment is only justified if the trial court's valuations of the farm and estate property are in error and the court failed to consider the relative incomes of the parties. Husband contends that the trial court properly accepted husband's evidence as to value and did consider the relative incomes of the parties.

The critical issue in this case is the value of the 54-acre farm and husband's one-fifth interest in nearby property which came from his uncle's estate. Husband's father sold the farm to the parties in 1965 and retained a life estate in a house on the property which he still lives in. Husband's father was 83 at the time of trial. Although the purchase price of $40,000 remains unpaid, husband and wife have made interest payments on the debt since 1965. Husband and wife operated the farm together and gradually converted it to filbert production. The 1977 filbert crop grossed $13,000 and the farm has not yet reached full production. The farm is located within Woodburn's urban growth boundary but is outside the city limits. It is currently zoned exclusive farm use.

Husband's one-fifth interest in the Ray Glatt estate consists of property from his uncle's estate which is located near the 54-acre farm. That property is planted in grass and wheat and farmed by a cousin.

At trial, husband estimated that the 54-acre farm was worth $3,000 per acre, or $162,000. He subtracted a farm tax deferral on 40 producing acres equalling approximately $28,000 to net $135,000. From this

figure, husband deducted the $40,000 still owed on the purchase price, arriving at a net value of $95,000.

Wife valued the 54-acre farm at $286,500. Wife's expert witness, a real estate appraiser, estimated that the farm was worth $326,500. Wife subtracted the $40,000 liability from that amount to arrive at the $286,500 figure.[2] Wife valued husband's one-fifth interest in the Ray Glatt estate at $122,250. This value was also based on the real estate appraiser's testimony.

The real estate appraiser had fourteen years' experience in the field, working in both the private and public sector. The Society of Real Estate Appraisers classified him as a senior real estate property appraiser. He based his estimates on the fact that property immediately to the south of both the estate and farm property had recently sold for $6,000 per acre. He noted that both properties were within the urban growth area and within close range of city services.

It does not appear from the record that the trial court ever expressly assigned values to the assets. With respect to the 54-acre farm and the Glatt estate property, both parties seem to agree that the trial court accepted husband's rather than wife's valuations. The only evidence husband offered as to the value of the farm and estate property was his own testimony based on personal knowledge of the present use of the land, tax and income considerations. Husband consulted with a Mr. Baglien, a Salem realtor, to obtain his "estimate of value of the property." Although no formal appraisal was received, Mr. Baglien did give husband advice to arrive at the property value. Husband testified, "Well, I don't recall what he told me * * * ."

ORS 107.105(1)(e) governs the division of property. It provides:

---

[2] We recognize that wife, in her valuations of the farm, failed to include any allowance for deferred farm real property taxes.

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances."

In *Johnson v. Johnson,* 245 Or 10, 419 P2d 28 (1966), the Supreme Court said:

"As this court has repeatedly and consistently held in making a distribution of the property of the marital community upon the dissolution of a marriage, each case rests on its own facts. No formula can be stated, nor percentage given, for all cases. Each case must be viewed independently, for a distribution which is just and proper in one case may not be just and proper in another." 245 Or at 15.

We have stated that the factors ORS 107.105(1)(c) mentions with respect to spousal support determinations, while not controlling, provide useful guidance in property divisions. *Haase and Haase,* 24 Or App 837, 840, 547 P2d 168 (1976); *Hardenburger and Hardenburger,* 18 Or App 267, 270-71, 525 P2d 179, *S Ct rev denied* (1974). Those factors are:

"* * * * *.

"(A) The duration of the marriage;

"(B) The ages of the parties;

"(C) Their health and conditions;

"(D) Their work experience and earning capacities;

"(E) Their financial conditions, resources and property rights;

"* * * * *

"(H) Such other matters as the court shall deem relevant." ORS 107.105(1)(c), (A) through (H).

Here the marriage in question endured for 28 years. Both parties are in their early fifties. While they are no longer young, neither faces retirement in the immediate future. Both are in good health. Both have saleable skills, wife as a school teacher, husband in agriculture. Wife earns approximately $1,400 per

month, husband $1,800. Neither husband nor wife have any pressing debts.

In dissolution cases involving marriages of long duration, the courts have consistently been less concerned with identifying the relative contributions of the parties than they have been with ensuring that the parties separate on as equal a basis as possible, under the circumstances. *Buttenhoff and Buttenhoff,* 35 Or App 287, 290, 581 P2d 111 (1978); *Lake and Lake,* 22 Or App 195, 197, 538 P2d 97 (1975). This is particularly appropriate where, as here, both parties worked throughout the marriage and made significant financial contributions to the accumulation of assets. We generally grant one party a "long half" only if there are circumstances such as poor health or significantly lower earning capacity which make such a distribution appropriate. *Buttenhoff and Buttenhoff,* 35 Or App 287, 290, 581 P2d 111 (1978); *Laird and Laird,* 27 Or App 161, 555 P2d 814 (1976) rev denied (1977). Here, both parties are able to work and have good jobs. While wife earns approximately $400 less gross per month than husband, both receive self sufficient salaries. Under the circumstances of this case, we believe each party should receive as close to half the value of the assets as possible. In light of the amount of property involved and the income earning ability of each party, an equal division will leave both parties in a healthy financial condition.

Husband's estimates as to the value of the farm and estate property are based on the assumption that it will continue to be used as farm land for the foreseeable future. Husband criticizes the real estate appraiser's testimony as speculative since it focuses on the value of the land as a potential subdivision for single family residences. Husband notes that subdivision would require annexation by the city, rezoning, and the extension of city services.

While we agree with husband that the real estate appraiser's valuation may be too high in light of the

problems a subdivider would face, we believe that husband's valuation fails to recognize the property's adaptability to other uses beyond its current worth as farm land. *See State Highway Comm. v. Assembly of God, Pentecostal,* 230 Or 167, 176, 368 P2d 937 (1962). This is not isolated rural property; it is within the urban growth boundary and adjoins a city which is growing in its direction. While the land may not be as well situated as the parcel to the south which recently sold for $6,000, it shares at least some of that land's potential.

As stated above, the distribution of property, using the husband's estimates of values, results in an award to the husband of property valued at $213,590.40, and property to wife valued at $222,285. However, if the real estate appraiser's values are used, the properties distributed to the husband have a value of $466,558.40, as against properties distributed to the wife having a value of $222,285.

We are convinced that fairness requires a property distribution somewhere between these extremes. We are not convinced that we should award either the farm or the estate property to the wife, outright. Nor do we believe that the creation of a tenancy in common in either parcel of property is appropriate in this case.[3]

Under all the circumstances, we find the farm and estate properties (items 9 and 10) to be worth $275,782, rather than $155,782 (as claimed by husband). Wife is entitled to half of the $120,000 increased value. The decree of the trial court is modified to award wife, in addition to the award of the trial court, a $60,000 judgment, payable within five years, earning interest at the legal rate. Execution on the $60,000 judgment shall not issue until five years from the entry of final decree in this case.

Affirmed as modified. Costs to appellant.

---

[3] In this connection, *compare Ruiz and Ruiz,* 29 Or App 273, 563 P2d 168 (1977), and *Slauson and Slauson,* 29 Or App 177, 562 P2d 604 (1977).