Argued and submitted June 12, 1981,
modified February 22, 1982

# In the Matter of the Marriage of
# MOORE,
*Respondent,*
*and*
# MOORE,
*Appellant.*
## (No. 15-79-04924, CA A20150)

641 P2d 74

Larry A. Brown, Eugene, argued the cause for appellant. With him on the brief was Flinn, Brown & Roseta, Eugene.

Jeffrey E. Potter, Eugene, argued the cause for respondent. With him on the brief was Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

### WARDEN, J.

Wife appeals from a marriage dissolution decree and assigns as errors: (1) the trial court's order that the family residence be sold and the proceeds used to pay the family debts; (2) the amount of permanent spousal support; (3) the court's order excusing husband from paying their minor daughter's psychiatric expenses; and (4) the court's order that husband's attorney fees be paid from the proceeds of the sale of the family residence.

At the time of trial, husband and wife were each 43 years old and had been married for 23 years. They have three children; two are emancipated, and custody of the third, a 16-year-old daughter, was awarded to wife. Husband manages a local business firm for which he was paid a base gross salary of $47,000 for 1979. Since 1975 he has received a yearly raise and an annual bonus, which has also increased in amount each year and totalled $14,000, after taxes, for 1979. Wife was a homemaker throughout their marriage and has minimal job skills. Jobs for which she is qualified offer monthly salaries in the range of $650 to $750, but she had not found steady employment at the time of trial.

During their marriage, the parties mismanaged their money, living well beyond their means, and they were approximately $38,000 in debt at the time husband moved out of the family home. Their only major marital asset is the family residence in which they have an equity of $70,890.

In her first assignment, wife contends that the trial court erred in ordering the sale of the family residence, application of the proceeds to the family debts and equal division of the remaining proceeds between the parties. Instead, she argues, she should be awarded the residence, subject to the mortgage, and husband should be required to assume the family debts, because of the "marked difference in earning power" between the parties and because that difference and husband's eligibility for an Oregon veteran's home loan make it easier for him to purchase a new residence.

We recognize, as did the trial court, that it may be appropriate to permit the wife to retain the family

residence after a marriage of long duration if there is a substantial disparity in future earning capacity. *Fraser and Fraser,* 30 Or App 905, 908, 569 P2d 24 (1977). In cases where the wife has been awarded the residence, however, there were generally additional factors weighing in favor of such an award. For example, in *Kelley and Kelley,* 40 Or App 605, 595 P2d 1294, *rev den* 287 Or 215 (1979), the husband received the parties' business, and the wife received their residence; and in *Christy v. Christy,* 244 Or 575, 579-580, 419 P2d 425 (1966), the parties' equity in their house had been preserved throughout three years of litigation only because of the wife's efforts. Moreover, those cases in which awarding the family residence to the wife resulted in her getting the "long-half" of the marital property differ from this one in two important respects: (1) there was not a substantial debt problem and, thus, there was no need to sell the residence; and (2) the resulting disparity in the property distribution was moderate at worst. *See, e.g., Laird and Laird,* 27 Or App 161, 165, 555 P2d 814 (1976), *rev den* (1977).

■ Here the trial court stated that it had attempted to work out a property division whereby wife would receive the residence, but the parties' financial situation foreclosed such a result. The parties had an equity in their home of $70,890 and personal debts approximating $38,000. To award the residence to wife and the debts to husband would result in wife receiving total net assets valued at between $92,091 and $132,094, and husband receiving net liabilities of between $15,235 and $30,600; such a division would clearly be unfair. Under the circumstances, the trial court divided the marital property in a reasonable and equitable manner, and we will not disturb it.

■ In her second assignment, wife disputes the amount of spousal support that she was awarded. Support was set at $900 per month in 1981, plus one-half of husband's 1981 bonus; $700 per month in 1982, plus 40% of husband's bonus; $600 per month in 1983, plus 25% of husband's bonus; $500 per month for the next four years; and $250 per month until wife reaches age 65. She contends that support should be continued at $700 per month until she reaches 65.

In marriages of long duration, such as this one, permanent spousal support is appropriate to lessen the financial inequality between the spouses; the goal is to provide the dependent spouse with a standard of living not overly disproportionate to that enjoyed during the marriage. *Grove and Grove,* 280 Or 341, 350-353, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977).

Although we do not have all the information that we would like to have, the salient considerations here are these: Wife is currently qualified for jobs which pay from $650 to $750 per month gross, but she has not been able to secure employment. Wife would like to enroll in a local business college, which would assure her employment paying $700 to $800 per month gross, $634 to $716 net, upon completing the course; the course costs $3000. Husband's net total income for 1979 averaged about $4100 per month. Although approximately $1170 of that can be attributed to an unusually large year-end bonus, which may not be equalled in the future, his net salary income for 1979 averaged approximately $2900 per month. There is a substantial disparity: an average monthly net income for husband of between $4100 and $2900 compared to an income for wife of between $634 and $716. We think that the trial court mitigated this disparity in an equitable manner for the first seven years following the dissolution. Spousal support of $250 until wife is 65 is insufficient, however. By the terms of the trial court decree, after 1983 wife will no longer receive a share of husband's bonus, and after 1987 her total net monthly income (her earnings plus support payments) will be less than $1000, while husband's (his earnings minus support payments) will average well over $2000. We recognize, of course, that wife's employment income may increase, but so may husband's. More important, there is no reason to think that wife's prospective increases will do more than keep up with increases in the cost of living. Therefore, we modify the decree to provide permanent spousal support of $500 per month beginning in 1984.

■ In her third assignment, wife contends that the trial court erred in ordering that husband should not be liable for any future psychiatric expenses incurred by their minor child unless husband agrees that the treatment is

necessary. Six days after the parties' separation, wife initiated psychiatric treatment for their daughter, because the daughter was upset over the impending divorce. Treatment has continued for self-esteem and adjustment problems related to the divorce. The psychiatrist charges $100 per hour, and a substantial bill has accrued. Husband has insurance coverage for the daughter, provided through his employment, which pays part of the cost of psychiatric care. He contends that, except for this insurance coverage, he should not be required to pay for care which he considers both unnecessary and extravagant in light of the parties' present indebtedness. The trial court agreed, and so do we.

There is, of course, no disagreement that a non-custodial parent has a financial responsibility for necessary medical care for his minor child. Here, however, daughter's problems appear to be transitory and relatively minor, typical of those experienced by many children whose parents are going through a divorce. Moreover, wife has a history of seeking psychiatric treatment freely. We think that a determination of whether the daughter's problems are severe enough to necessitate intensive psychiatric care requires, to a large extent, an evaluation of wife's judgment in seeking the treatment, and in this area we defer to the trial court.

■    In her fourth assignment, wife contends that the trial court erred in ordering that both husband's and her attorney fees, $2000 and $3500, respectively, be paid out of the proceeds of the sale of the family residence. She argues that the court should have awarded attorney fees to her only, in the form of a judgment for $3500. In ordering that both parties' attorney fees be paid out of the proceeds of the sale of their residence, the trial court was treating those fees like all the other debts which the parties had incurred during their marriage. That makes good sense, for the costs associated with dissolving a marriage are as much an incident of the marriage as are the costs incurred in maintaining it, *e.g.,* purchase of a family residence. We recognized this simple reality in *Craig and Craig,* 30 Or App 419, 423, 567 P2d 141 (1977), when we stated that the amount of attorney fees awarded may be less than the actual amount to be paid the attorney, because the amount one party contributes towards the other's attorney fees "is

intertwined in the financial considerations of the parties and is in reality in the nature of a property division."[1] *See also, Paget and Paget,* 36 Or App 595, 600-602, 585 P2d 38, *rev den* 284 Or 521 (1978). Moreover, ORS 107.105(1)(e) requires the trial court to divide the parties' property in a manner that is "just and proper in all the circumstances." The trial court was clearly seeking to do just that in its treatment of attorney fees, and we decline to disturb its determination.

Modified to provide that spousal support to wife shall continue permanently at $500 per month beginning in 1984. No costs to either party.

---

[1] Because it was proper for the trial court to treat the parties' legal costs like the other family debts, we do not consider husband's failure to plead attorney fees to be a fatal defect. Evidence as to the amount of husband's debt to his attorney was presented to the trial court.