Argued and submitted December 6, 1988, affirmed as modified February 14, reconsideration denied April 4, 1989

In the Matter of the Marriage of

RICHARDSON,
*Respondent - Cross-Appellant,*
*and*

RICHARDSON,
*Appellant - Cross-Respondent.*
(TC D86-1712; SC S34988)

769 P2d 179

Elizabeth Welch, Portland, filed the brief and argued the cause on behalf of the appellant - cross-respondent.

Garr M. King, Portland, argued the cause on behalf of the respondent - cross-appellant.

Before Peterson, Chief Justice, and Linde, Carson and Jones, Justices, and Howell, Justice pro tempore.

HOWELL, J., pro tempore

**HOWELL, J.,** pro tempore.

Pursuant to ORS 19.210, the Court of Appeals certified to this court this appeal in a suit for dissolution of marriage. No children were born of the marriage. The only issues before this court concern the property division made by the trial court and the awards of spousal support and attorney fees. Both parties appeal.

When the parties married on July 2, 1961, husband had just completed his first year of law school. Both parties worked while he attended law school. Wife had previously received a bachelor's degree in sociology. After his graduation they moved to Oregon where husband worked in various areas of public and private practice and as a municipal and district court judge and, since 1976, as a Court of Appeals judge. After their marriage and while the parties lived in Salem, wife worked for a secretarial service and then enrolled in a graduate school in social work.

In 1964 wife developed emotional problems and was hospitalized for five weeks in the Oregon State Hospital. The parties moved to Portland and wife worked as a social worker. In 1968 wife was hospitalized again for emotional problems. In 1970 she resigned her position as a social worker and managed an apartment house. She returned to social work in 1972 and was hospitalized again for three months in 1976. She engaged in part-time teaching from then until 1980. Wife was hospitalized again for three weeks in 1980.

In 1980 the parties separated but did not seek dissolution of their marriage, fearing that a dissolution would cause wife to lose the benefits of husband's medical health insurance. Wife enrolled in Portland State University and received a bachelor's degree in English in 1982. She then moved to Montana, enrolled in college and received a master's degree in Fine Arts in 1984. She returned to Portland, did private tutoring, and taught in the public schools.

After separating in 1980, the parties agreed to a support arrangement. Husband initially paid $600 per month to wife, which later increased to $800 and finally to $850 per month in 1984. These payments largely financed wife's education at Portland State University and the University of Montana. Husband also paid her unreimbursed medical expenses,

car insurance, gasoline expenses, and for the occasional use of a Visa Card.

■   While they were separated, but before this dissolution proceeding began, the parties individually acquired a number of assets. Husband acquired a deferred compensation plan and a 1970 truck, valued respectively at $10,797 and $750. During this period wife acquired a 1984 Honda automobile valued at $2,700 and a condominium worth $39,500.[1]

Before the parties separated in 1980, husband had paid $30,035 into a Public Employe's Retirement System (PERS) account.[2] However, his rights in the plan had not yet "vested," meaning that if husband had left his employment at the date of separation he would not have been entitled to any retirement benefits. Husband's rights in the plan vested in 1984, after the parties separated.

Husband filed suit for dissolution of marriage in May 1986 and a decree of dissolution was entered on January 22, 1988. In dividing the marital assets, the trial court distinguished between property acquired by the parties before and after separation, the latter of which was awarded entirely to the spouse responsible for its acquisition. The trial court awarded the entire PERS account to husband, apparently on the theory that, although the account was a "marital asset," the statutory presumption of equal spousal contribution (found in ORS 107.105(1)(f)) had been rebutted because husband's rights in the pension did not vest until after the parties had permanently separated. The court divided the individually acquired assets (*i.e.,* those acquired after separation) as follows:

---

[1] Wife's parents purchased the condominium for her in 1986. Wife testified that she granted a promissory note to them for the purchase price but that she had not made any payments on the note. The trial court initially offset the amount wife owed her parents against the value of the condominium. In its decision on reconsideration, however, the court found that wife's parents would forgive (or had already forgiven) this indebtedness. We agree and conclude that the condominium's value should be included in wife's share of the marital property.

[2] Retirement accounts like this one into which the employee deposits funds are called "contributory," as distinct from "non-contributory" accounts into which the employer pays on behalf of the employee. The PERS plan has been amended since 1980. It is now non-contributory.

| Property | Husband | Wife |
|---|---|---|
| Condominium | | $39,500 |
| 1984 Honda | | 2,700 |
| PERS account | $104,008 | |
| Deferred Compensation Plan | 10,797 | |
| 1970 truck | 750 | |
| TOTAL | $115,555 | $42,200 |

Because husband had been awarded the greater part of the individually acquired assets, the court applied *Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982), and awarded wife the greater share of the jointly acquired marital assets as follows:

| Property | Husband | Wife |
|---|---|---|
| Balsam Drive residence | $45,100 | |
| Blossom Drive rental residence | 12,570 | $ 10,000 |
| 5 acres at Kaiser Rd. | | 20,000 |
| Lots at Manzanita | | 50,000 |
| Real estate contract receivable | | 7,000 |
| 379 shares psychiatric center stock | | 17,529 |
| 2 Alpha Romeos | 3,300 | |
| Cash surrender value, life insurance policy | | 1,667 |
| TOTAL | $60,970 | $106,196 |

Including both the individually acquired assets and the jointly acquired assets, this property division awarded husband $176,525 and it left wife with $148,396.

The trial court concluded that wife's emotional problems prevented full-time employment but that she would be able to continue teaching part-time. The court awarded wife the sum of $650 per month for two years starting November 1,

1987 and $500 per month as "permanent" spousal support.[3] The court also awarded $2,000 as attorney fees to wife.

On appeal wife contends that she should have been awarded one-half of the value, at the time of trial, of husband's PERS retirement fund[4] and that the permanent spousal support should be raised from $500 per month to $1,500 per month. Husband cross-appeals, contending that the trial court should not have awarded "permanent" spousal support or attorney fees.

At trial there was evidence that wife's 1987 income from part-time teaching averaged $533 per month. In addition, she also received $100 per month from a boarder living at her home. The trial court made no specific factual findings regarding wife's income, but it awarded her a contract receivable for the sale of real property which paid her $200 per month plus spousal support of $650 per month, totalling $1,483 per month until November 1, 1989, and $1,333 thereafter when the spousal support decreases to $500 per month.

The trial court made no factual findings concerning wife's monthly expenses. In her Uniform Support Application she listed total monthly living expenses of $2,563 per month. That sum seems inconsistent with her testimony at trial. She testified that she paid $145 per month on her car loan, $115 on medicine, $33 on car insurance, $12 on home insurance and $200 per month on doctor fees for a total of approximately $500. She also testified that she needed $400 per month "to live." Assuming that this sum should be added to the $500

---

[3] As we have explained on several occasions, "permanent spousal support" is something of a misnomer. Such a spousal-support award is not permanent but lasts for an indefinite period and is subject to revision by subsequent court order in case of changed circumstances. *See Bates and Bates,* 303 Or 40, 42 n 2, 733 P2d 1363 (1987); *Grove and Grove,* 280 Or 341, 348 n 5, 571 P2d 477, *mod and reh'g den* 280 Or 769, 572 P2d 1320 (1977).

[4] Wife incorrectly states that husband's interest in the PERS pension plan was valued as of the date of the parties' separation in 1980. Husband's interest was valued as of the end of the calendar year preceding trial. On appeal, wife acknowledges that the actuarial present value of husband's pension in PERS as of December 31, 1986, was $104,008, the amount found by the trial court.

In the circuit court wife filed a "proposed Distribution of Assets" in which she did not suggest any division of the $104,008 in the PERS plan. She did propose that she be awarded $10,353, the amount then in husband's deferred compensation plan.

above, her total expenses appear to be approximately $900 per month.

## ANALYSIS

### The Property Division

In relevant part, ORS 107.105(1) provides that when a court grants a decree of dissolution, it has authority to decree as follows:

> "(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

Wife contends that the trial court's division of property was not just and proper under the circumstances as is required by ORS 107.105(1)(f). In particular she argues that the trial court improperly awarded husband all of the PERS account, resulting in an unequal division of the marital assets.

■ As noted above, the trial court concluded that husband's pension was an asset individually acquired by husband because his rights in the plan vested after the parties had separated. The court therefore awarded husband the entire value of the account. We think that this approach was improper.

ORS 107.105(1)(f) provides in part that "[a] retirement plan or pension *or an interest therein* shall be considered as property." (Emphasis added.) Added to ORS 107.105(1)(f) in 1983, *see* Or Laws 1983, ch 728, § 2, this provision overruled *Giovanini and Giovanini,* 50 Or App 279, 622 P2d 722 (1981), and sought to make it clear that both vested and unvested pensions were property subject to the court's dispositional power. In *Giovanini,* the Court of Appeals had ruled that the nonvested portion of a pension was not divisible property. 50 Or App at 282. By adding to ORS 107.105(1)(f) the language that a pension "or an interest therein shall be considered as property," the proponents of the measure thought that "it

should be clear that the committee is including both vested and unvested [pensions]." *See* Minutes, Senate Committee on Judiciary, Testimony of Nancy Campbell, April 20, 1983, p 7. When it was later suggested that the phrase "or an interest therein" be deleted, a member of the Senate Committee on Judiciary argued that this language should be retained because "the pension may not be vested at the point that the divorce occurs * * *." This senator added that although unvested pensions would be deemed divisible property, their contingent nature was a matter to be considered in valuation: "If it is not vested, it will not be worth as much * * *." Minutes, Senate Committee on Judiciary, Statement of Margie Hendriksen, May 25, 1983, p 20.[5]

■    We conclude that, even though husband's rights had not vested when the parties separated, he had a property "interest" in the pension at that time. Consequently, to the extent that it is attributable to husband's pre-separation employment, the present value of the pension is a jointly acquired marital asset. Conversely, that portion of the present value of husband's pension attributable to his post-separation employment is an individually acquired asset with respect to which the statutory presumption of equal contribution is rebutted because this portion of his pension was earned solely by husband's efforts at a time when the parties were no longer living as a marital unit. *See Pierson and Pierson, supra,* 294 Or at 123; *Jenks and Jenks,* 294 Or 236, 241, 656 P2d 286 (1982); *Lemke and Lemke,* 289 Or 145, 148, 611 P2d 295 (1980).

The more difficult problem, at least as far as this case is concerned, involves valuation. Husband's PERS plan is a "defined benefit plan." A member of the plan is entitled to a

---

[5] This approach is the growing trend (and perhaps even the majority rule) among jurisdictions. In a landmark decision on the subject, *In re Marriage of Brown,* 15 Cal 3d 838, 126 Cal Rptr 633, 544 P2d 561 (1976), the California Supreme Court declared that pensions, whether vested or not, represent a property interest subject to the court's dispositional power. *See also Laing v. Laing,* 741 P2d 649 (Alaska 1987) (citing numerous cases representing this "modern" trend). As the Alaska Supreme Court pointed out in *Laing,* these cases reason that "the contingent nature of a nonvested pension presents simply a valuation problem, bearing on the non-employee spouse's entitlement to a just share of the marital assets." 741 P2d at 656. One policy reason for the rule that unvested pension funds are divisible property is that it avoids the injustice that otherwise occurs where the employee spouse procures a divorce just before his or her pension rights vest. *See* Note, *Retirement Pay: A Divorce in Time Saved Mine,* 24 Hastings L J 347, 353 (1973).

monthly retirement check, the amount of which is based upon the length of service as a judge and the average annual salary at the time of retirement.[6]

■ Generally, the proper method of valuing a defined benefit plan is determining its "actuarial present value." *See* Golden, Equitable Distribution of Property 227-31, § 7.12-13 (1983). On numerous occasions the Court of Appeals has declared that actuarial present value is to be used in the valuation of defined benefit plans. *See, e.g., Doering and Doering,* 71 Or App 101, 105, 691 P2d 120 (1984); *McNamara and McNamara,* 65 Or App 785, 788, 672 P2d 722 (1983); *Minnis and Minnis,* 54 Or App 70, 75, 634 P2d 259 (1981). An actuary computes the present value essentially by determining the amount of money presently needed to purchase an annuity which would pay a particular monthly amount for the life expectancy of the retired employee. In this case, an actuary determined that the actuarial present value of the PERS retirement account as of December 31, 1986 was $104,008.

We must determine what portion of the present value of husband's pension is attributable to his pre-separation employment. Because the benefits available under defined benefit plans depend largely on the employee's length of service, a number of courts (including the Oregon Court of Appeals) have approved the use of a "time rule" in dividing pensions as property. *See Manners and Manners,* 68 Or App 896, 899, 683 P2d 134 (1984); *see also In re Marriage of Fithian,* 10 Cal 3d 592, 111 Cal Rptr 369, 517 P2d 449, *cert den* 419 US 825 (1974); *Kruger v. Kruger,* 139 NJ Super 413, 354 A2d 340 (1976) *mod* 73 NJ 463, 375 A2d 659 (1977); *Webster v. Webster,* 442 SW2d 786 (Tex Civ App 1969); *see generally* Brunch, *The Definition and Division of Marital Property in California: Towards Parity and Simplicity,* 33 Hastings L J 771, 851 n 332

---

[6] An employee has an account into which contributions are placed; but technically the amount of contributions—the "account balance"—is irrelevant in determining the monthly retirement benefits.

The only respect in which an account balance is relevant in "defined benefit plans" is that, if the employee dies either before receiving any benefits or before receiving benefits in excess of the amount of his or her account balance, then the undistributed account balance is refunded to the employee's estate or beneficiary.

Account balances are relevant when valuing "defined *contribution* plans" because those plans limit the employee's benefits to the accumulated principal and earnings in the account. *See Franzke and Franzke,* 292 Or 110, 112, 637 P2d 595 (1981).

(1982) ("time rule is useful with respect to defined benefit plans, in which benefits reflect some factor (such as final earnings) that does not correspond directly to cash contributions to the fund.") The time rule determines the portion of the employee spouse's benefits attributable to the pre-separation employment by multiplying the pension's actuarial present value at the time of trial by a fraction, the numerator of which is the years (or months) of service during which the spouses lived as a marital unit, the denominator of which is the total years (or months) of service.

In this case, the actuarial present value of $104,008 was based on 15 years of service by husband. During nine of those years the parties lived together as a marital unit; during the last six years they lived separately. Multiplying the present value, $104,008, by the fraction nine-fifteenths produces $62,404.80, which represents the portion of the pension that is jointly acquired marital property subject to the presumption of equal contribution.

In light of our holding with respect to husband's pension, ORS 107.105(1)(f) requires us next to consider what division of all of the parties' property, including the pension, is "just and proper in all the circumstances." On a number of occasions this court has articulated principles to guide property divisions in dissolution cases. *Engle and Engle,* 293 Or 207, 646 P2d 20 (1982), in part concerned the question whether stocks acquired by the husband during a marriage of 25 years and held solely in his name were marital assets. We reviewed the legislative history of ORS 107.105(1)(f) (then codified as ORS 107.105(1)(e); *see* Or Laws 1983, ch 728, § 2) and discussed the policy concerns underlying that statute. We concluded that the stock was a marital asset and that "[i]n a long term marriage in which the parties' properties were acquired during the marriage, the parties should separate on as equal a basis as possible." 293 Or at 219.

In *Pierson and Pierson,* 294 Or 117, 123, 653 P2d 1258 (1982), we considered whether, under ORS 107.105(1)(f), an unequal property division was nevertheless just and proper because the presumption of equal contribution had been

rebutted with respect to some of the marital assets. In *Pierson* the wife inherited property valued at between \$131,200 and \$181,200 while the parties were still married but separated and seeking dissolution. The parties also owned a family home worth \$90,000, a "Kathy Street residence" worth \$24,310, and a condominium in which they had acquired \$2,500 equity. 294 Or at 119. The trial court awarded the entire inheritance to the wife.

On review we held that, although the inheritance was a marital asset, the presumption of the husband's equal contribution had been rebutted. 294 Or at 123. We declared:

"Absent overriding considerations, marital assets should be divided as equally as practical. Where, as here, one spouse is equitably entitled to receive a marital asset because he or she acquired it free from any contribution of the other spouse, the asset can initially be removed from the equation. Thus, unless additional considerations dictate otherwise, wife should retain her inheritance." 294 Or at 123 (citation omitted).

This is not to say, however, that a spouse's entitlement to individually acquired property may not be disturbed, or that all marital assets other than those individually acquired must be divided equally. We cautioned in *Pierson* that "[t]here are social objectives as well as financial ones to be achieved and that may result in an uneven financial division." 294 Or at 123. Consequently, a court may order an unequal division of property

"to the extent required for the accomplishment of the other purposes of the decree, whether that be to preserve assets, to enable a party to pay support, or, as here, to enable both parties to begin post-marital life with a degree of economic self-sufficiency, or to satisfy other subsections of ORS 107.105." 294 Or at 124 (citations omitted).

We concluded that, where one spouse's income and property were greater, equal division of marital assets did not necessarily promote or enhance the parties' economic self-sufficiency. Thus, in dividing the non-inherited marital assets in *Pierson* we took into account that the wife had greater income and greater financial resources because of the inheritance. We held that the property should be divided as follows:

| Property | Husband | Wife |
|----------|---------|------|
| Family Home | $70,000 | $20,000 |
| Kathy Street residence | | 24,310 |
| Condominium | | 2,500 |
| Subtotal | $70,000 | 46,810 |
| Plus inheritance | | 131,200 - 181,200 |
| TOTAL | $70,000 | 178,010 - 228,010 |

Thus, the husband, the less economically self-sufficient of the spouses in *Pierson,* was awarded more than half of the marital assets other than those individually acquired. 294 Or at 125.

■ ■　　　With these principles in mind, we turn to the property division in this case. Our holding that $62,404.80 of husband's pension is a jointly acquired marital asset means that $41,603.20 of the pension is husband's individually acquired asset. This produces the following distribution of individually acquired assets:

| Property | Husband | Wife |
|----------|---------|------|
| Condominium | | $39,500 |
| 1984 Honda | | 2,700 |
| PERS account | $41,603.20 | |
| Deferred Compensation Plan | 10,797 | |
| 1970 Truck | 750 | |
| TOTAL | $53,150.20 | $42,200 |

This leaves the remaining $62,404.80 of the pension to be considered in the distribution of the parties' jointly acquired marital assets.[7] Here, as in *Pierson,* one party's income, earn-

---

[7] There are generally two means of distributing the pension fund. First, using the "reserved jurisdiction method" the court determines what fractional portion of the pension belongs to the non-employee spouse and then orders that either the employee spouse or the pension administrator pay that fractional portion of each monthly retirement check as it comes due to the non-employee spouse.

Using the "offsetting" or "present cash value method," on the other hand, the court first determines what part of the present value of the pension belongs to the non-employee spouse, awards the entire present value to the employee spouse, and then offsets this by awarding the non-employee spouse other marital assets equal to his or her interest in the pension fund. This offsetting method is generally preferred because it disentangles the parties, but it only works where the marital estate contains other

ing power, and individually acquired assets are greater. More over, not only do wife's emotional maladies prevent her from working full time, but they also periodically prevent her, for considerable periods of time, from working at all. In addition, these maladies generate substantial medical expenses. We therefore modify the decree of the trial court and augment wife's share of the jointly acquired property by eliminating the wife's $10,000 lien on the Blossom Drive property and awarding her the entire interest in the Blossom Drive property, subject to any indebtedness against the property which she must pay. This produces the following division of the jointly acquired marital assets:

| Property | Husband | Wife |
|---|---|---|
| Balsam Drive residence | $ 45,100 | |
| Blossom Drive rental residence | | $ 22,570 |
| 5 acres at Kaiser Rd. | | 20,000 |
| Lots at Manzanita | | 50,000 |
| Real estate contract receivable | | 7,000 |
| 379 shares psychiatric center stock | | 17,529 |
| 2 Alpha Romeos | 3,300 | |
| Cash surrender value, life insurance policy | | 1,667 |
| PERS account | 62,404.80 | |
| TOTAL | $110,804.80 | $118,766 |

Considering all the marital assets—*i.e.* both the individually acquired and the jointly acquired assets—this property division leaves husband with property worth $163,955; it awards wife property valued at $160,966. Such a division is just and proper under the circumstances.

### Spousal Support

■　　　Wife contends that the trial court's award of spousal support is inadequate. She urges this court to adopt a rule that

sufficiently valuable assets to offset the pension. Because there are other sufficiently valuable assets in the marital estate to offset the value of the pension, we use this method here.

For a general discussion of these methods, see Golden, Equitable Distribution of Property 177-80, § 6.16 (1983).

spousal support payments provide the recipient spouse with an income equal to that of the spouse making the payment. She therefore asks this court to increase the award of spousal support from $500 per month to $1,500 per month.

Wife's suggestion that we fashion a rule requiring spousal support payments to put the former spouses on equal financial footing is not well taken. Indeed, it squarely contradicts the relevant statutory provisions. ORS 107.105(1)(d) empowers the trial court to order spousal support as part of a dissolution decree. In determining the amount and the duration of support payments that "may be just and equitable for the other party to contribute," the trial court must consider a number of factors, including: the need for education to enable the party to pursue career objectives and become self-supporting at a standard of living "not overly disproportionate" to that enjoyed during marriage; whether the present or future earning capacity of a party has been impaired due to absence from the job market occasioned by homemaking, in which case the court may award the disadvantaged party support so that he or she may maintain a standard of living "not overly disproportionate" to that enjoyed during marriage; and any other matters that the court deems relevant in order that each party may maintain a standard of living "not overly disproportionate" to that enjoyed during marriage. *See* ORS 107.105(1)(d)(E), (F), and (M). Clearly, the rule advanced by wife does not square with the test prescribed by the statute.

In decreeing support payments under ORS 107.105(1)(d), the court is to consider a number of specifically enumerated factors, of which several are relevant here. The court must take account of the length of the marriage, the age and health of the parties, their respective earning capacities, the need for education to enable a party to become self-supporting, whether one party's earning capacity has been impaired by homemaking activities, the cost of health care to a party, and any other matters the court deems relevant. We have stated that "economic self-sufficiency of each spouse is to be the objective of a spousal support order pursuant to the statute. Thus, a spousal support order must recognize the effect of the marriage upon the capability of a spouse for economic self-sufficiency." *Lemke and Lemke, supra,* 289 Or at 148. In *Lemke* we upheld a denial of spousal support because the wife had adequately supported herself during a

20-year separation, which indicated that the marriage had not adversely affected her earning capacity. 289 Or at 149.

In *Grove and Grove,* 280 Or 341, 348, 571 P2d 477, *mod and reh'g den* 280 Or 769, 572 P2d 1320 (1977), we stated that in fashioning spousal support orders, courts should consider "whether the wife's property and potential income, including what she can earn or can become capable of earning, will provide her with a standard of living which is not overly disproportionate to the one she enjoyed during the marriage." Although spousal support payments are designed largely to help a spouse overcome the effects of domesticity, spousal support is nevertheless appropriate even where a spouse's impaired earning capacity results not from homemaking activities but from health problems. 280 Or at 350. Finally, in *Grove* we declared that the propriety of a spousal support order must be judged in light of the other financial portions of the dissolution decree. 280 Or at 344.

Wife's impaired earning capacity results not from the effects of domesticity but from health problems. Her health apparently necessitated a career change. Pursuant to their separation agreement, husband has already provided wife considerable support which enabled her to obtain undergraduate and graduate training in a profession of her choice. In light of our modification of the property division, we conclude that the spousal support payments ordered by the trial court are just and equitable and will allow wife to meet her expenses and maintain a standard of living not overly disproportionate to that enjoyed during marriage.

### Cross Appeal

Husband contends first in his cross appeal that the court should not have awarded "permanent" spousal support to wife. The trial court found that the prognosis for wife's emotional problem was not favorable and that she would not be able to maintain full-time employment. The record clearly supports this finding. Considering her past medical history and extended hospitalization and that wife's income alone is never likely to allow her to meet her expenses or maintain a standard of living not overly disproportionate to that which she enjoyed during marriage, we find that the spousal-support award was proper.

Husband contends also that the trial court should not have awarded attorney fees to wife. ORS 107.105(1)(i) authorizes the award of "such amount of money as the court finds was reasonably necessary to enable such party to prosecute or defend the suit." Awarding attorney fees is a matter largely within the trial court's discretion. *Turner v. Turner,* 237 Or 39, 40-41, 390 P2d 360 (1964) (per curiam). Here, considering all the circumstances involved, including wife's emotional illness and the prospect of only part-time employment and husband's greater income, we do not believe that the court abused its discretion in awarding attorney fees.

Affirmed as modified. No costs.