Argued and submitted May 16, 1997, remanded with instructions in part; otherwise affirmed February 11, 1998

In the Matter of the Marriage of

Allan Wayne WILSON,
*Appellant,*

*and*

Patricia Mae WILSON,
*Respondent.*

(DR 9508532; CA A93512)

954 P2d 212

Randall J. Wolfe argued the cause and filed the brief for appellant.

Norman L. Lindstedt argued the cause for respondent. With him on the brief was Lindstedt & Buono, P.C.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Husband appeals from a marriage dissolution judgment. ORS 107.105. He argues that the award of indefinite spousal support is inappropriate and that the property division is inequitable. We review *de novo*, ORS 19.415(3), and modify the judgment to provide for an equal distribution of the assets.

At the time of dissolution, the parties had been married for 20 years. Husband was 40 and wife was 39. Both were in good health. They had three children, ages 13, 10 and 9.

Both husband and wife have high school educations. After their marriage in 1976, husband worked in the automotive parts business and wife worked for various companies doing bookkeeping. In 1982, the parties' first child was born and they decided that wife should stay home with the child. During the same year, husband began working as an apprentice electrician. In 1987, he became a journeyman electrician. He continues to work in that field, often acting as a foreman, and earns $4,803 per month. In 1994, wife began working part time as a teacher's assistant and earns $526 per month.[1] For trial, a certified personnel consultant evaluated wife's employment potential. She concluded that wife had deficiencies in spelling and vocabulary and that she was not computer literate. The consultant concluded that she could not place wife in a full-time position until wife developed those skills. Her recommendation was that wife should continue working for the school district part time with the hope that she could eventually move into a full-time position with it. The consultant speculated that, even with an associate degree, which would take approximately five years for wife to complete, the most wife could earn after many more years with the school district would be between $25,000 and $30,000 per year.

---

[1] To reach that estimated salary, the trial court took the total amount wife earned in a year and divided it by twelve. Neither party challenges the estimated salary.

Continuing in a part-time position after dissolution would also allow wife to be home when her children get home from school. The children have had a difficult time adjusting to the divorce. One child is having a particularly hard time adjusting and has other educational and emotional problems, which the other children often try to exploit. As a result, the family's counselor, Dr. Eckland, testified that she thought that the children should be supervised in the afternoons. Ideally, because the children need someone to watch them who has psychological authority over them, wife should be that supervisor.

■ The trial court ordered husband to pay wife $1,050 per month in spousal support for five years, then $800 per month indefinitely. In calculating child support, it took that award into account, concluded that wife had rebutted the presumption that she could work full time and assumed that wife's gross income was $526 per month. *See* OAR 137-50-330(2). The trial court concluded that it was appropriate to use wife's actual income in that calculation because of wife's "lack of skill, lack of self-confidence, transitional depression, and the desirability of the [c]ustodial [p]arent working less than full time to fulfill the role of parent and homemaker." Ultimately, the court ordered husband to pay $806 per month in child support.

■ The trial court also divided the parties' property. At the time of trial, the parties had the following assets: (1) equity in the family home, $71,981.18;[2] (2) household furnishings, $3,490.50; (3) tools, $600; (4) two cars of approximately equal value; and (5) three retirement accounts: (a) husband's Edison Pension Trust, $79,640; (b) husband's IBEW Annuity, $12,984.82; and (c) wife's retirement account with the school district, $250. They had the following liabilities: (1) the past and current property taxes due on the house, $2,200; (2) two credit-card accounts, one with a balance of $1,015.64 and the other with a balance of $100; (3) a loan from husband's mother, $3,000; (4) a loan from Jan Weston, $4,000; and (5) doctors' bills, $2,069.

---

[2] The trial court valued the house at $140,000, and it had a $68,018.82 mortgage.

The trial court concluded that there would be an unequal distribution of the assets, because husband's earning power was far greater than wife's and wife had inadequate provisions for retirement. The trial court awarded wife the family home and its household furnishings. It also awarded her one of the cars. Finally, it awarded her $15,000 of husband's Edison Pension Trust, all of husband's IBEW Annuity, and her retirement account with the school district. She assumed responsibility for the property taxes, the loan from Jan Weston, the doctors' bills and the credit card with the $100 balance. The court awarded husband the $64,640 balance of his Edison Pension Trust, the tools and the other car. He assumed responsibility for the remaining credit card and the loan from his mother. Each party was ordered to maintain his or her life insurance policy. With that distribution of assets and liabilities, wife received $102,935 and husband received $68,366.12.

Husband makes several assignments of error. First, he challenges the court's decision to award wife indefinite spousal support. He asks for an award of spousal support in the amount of $800 per month for five years and then $400 per month for three years. Wife argues that the trial court's order was appropriate in this case and should remain undisturbed. We agree with wife.

■ When determining the amount and duration of spousal support, our task is to arrive at a just and equitable amount. ORS 107.105(1)(d).

> "Several factors are relevant to our consideration of the amount and duration of support, including the age and health of the parties, the length of the marriage, the parties' relative earning capacities, the extent to which one spouse has suffered an impairment in earning capacity because of absences from the job market to attend to family needs and the overall financial circumstances of the parties."

*Budge and Budge*, 150 Or App 209, 218, 945 P2d 1101 (1997) (citing ORS 107.105(1)(d)(A)-(M)). In this case, although wife is in good health and relatively young, other factors weigh heavily in favor of ordering indefinite spousal support. The parties were married for 20 years and wife worked as a homemaker for 12 of those years. She remained at home for 12

years because she and husband decided that she should be a "stay-at-home mom." In 1994, she became a teacher's assistant. That position is, by definition, part time and has not helped prepare her for a full-time position. Her decision to continue to work part time while she develops more marketable skills is a practical career choice and in the best interest of the parties' children, at least at this point. Eventually, she will have both the skills and the time to acquire a full-time position. Even then, however, the maximum that she can be expected to earn after years with the same employer is $30,000 per year. Husband currently makes nearly twice that amount, and it is reasonable to assume that he will be able to maintain that level of income. Thus, there is and will remain a substantial disparity in the parties' earning capacity, which is in part due to the parties' decision about how wife would spend her time during the marriage. Given those facts, we conclude, as did the trial court, that it is just and equitable to award wife indefinite spousal support.

■ We also agree with the amount of spousal support set by the court. Initially, wife will be working part time, and $1,050 per month will allow her to take classes to improve her marketable skills and maintain a standard of living not overly disproportionate to that enjoyed during the marriage. In five years, she will have developed the skills necessary to obtain a full-time position, and the reduction at that time to $800 is appropriate.

■ Husband also assigns error to the court's decision to use wife's actual salary in calculating the parties' child support obligations. Generally, when a parent works part time, that parent's child support obligation is based on his or her potential gross income when working full time for at least minimum wage. OAR 137-50-360(1). However, under OAR 137-50-360(1), a parent may rebut the presumption that he or she could be employed full time. *See, e.g., Cress and Cress*, 119 Or App 197, 200, 850 P2d 383 (1993) (mother, a full-time student raising two children and working in a work-study program that limited her earnings to $300 per month, rebutted presumption under OAR 137-50-360(1)); *Koch and Koch*, 110 Or App 497, 500, 823 P2d 442 (1992) (OAR 137-50-360(1) provides a "rebuttable presumption that every parent can be employed full-time at at least the minimum wage."). In this

case, we conclude that wife has rebutted that presumption. With her job skills, it would be difficult for her to secure a full-time position at this time and, according to the consultant, her best career move would be to continue working part time for the school district while developing her marketable skills. Moreover, at this point, wife's decision to work part time is in the best interest of the parties' children.

Because wife rebutted the presumption that she could work full time, wife's potential income must be determined under OAR 137-50-360(2). Under that rule, wife's potential income may be determined by considering wife's "employment potential and probable earnings based on [her] recent work history, occupational qualifications, or [the] prevailing job opportunities and earning levels in the community." Using that standard, we conclude that the trial court correctly concluded that wife's potential income was $526 per month, her actual salary.

■■ Husband's final assignment of error relates to the property division. Generally, a court should divide the marital assets as equally as possible. *Richardson and Richardson*, 307 Or 370, 379, 769 P2d 179 (1989). According to ORS 107.105(1)(d)(F), however, a court's task in dividing the assets is to distribute them in a manner that is "just and proper in all the circumstances." As a result, on occasion, an unequal division of the parties' assets is appropriate. *See Stice and Stice*, 308 Or 316, 328, 779 P2d 1020 (1989). In this case, because it concluded that husband's earning power was substantially greater than wife's and it wanted wife to have some assets from the marriage available for retirement, the trial court awarded wife the "long half" of the marital property division. Wife was awarded net assets in the amount of $102,935, which included the family home and $28,234.82 of the parties' retirement funds. Husband was awarded net assets in the amount of $68,366.12, which included $64,640 in retirement benefits. On appeal, husband assigns error to the trial court's division and argues that the property should be divided equally. He proposes that wife be awarded the family home, $11,000 of the Edison Pension Trust and her own pension fund and that he be awarded the remaining $68,640 of the Edison Pension Trust and the IBEW Annuity. Given that distribution, wife would receive net assets in the

amount of $85,950.18 and husband would receive net assets in the amount of $85,350.94. Without addressing husband's proposed division, wife argues that the trial court should be affirmed.

We agree with husband that an equal division of the property is appropriate in this case and adopt his proposed revision to the property division. While we agree with the trial court that husband's earning power is greater than wife's, we conclude that the indefinite spousal support adequately ensures that the parties will each maintain a standard of living not overly disproportionate to that enjoyed during the marriage. Moreover, under the revised property division, wife will have significant assets from the marriage available at retirement. Although husband is awarded a substantially greater share of the retirement benefits under his proposal, wife is awarded her own pension fund, $11,000 of the Edison Pension Trust and the family home. The family home is a significant retirement asset. Between now and her retirement, the equity in the home will continue to grow. Although the parties agree that wife should have the family home without an equalizing judgment so that wife can live in the home with the parties' children, by the time wife reaches retirement the children will be adults. Therefore, their welfare will no longer be a relevant factor, and wife has not offered any other reason why the equity in the home should not be considered available to her at that time. Considering all of the circumstances, we conclude that the equal property division proposed by husband is just and equitable.

Remanded with instructions to modify the judgment to award husband the IBEW annuity and to award wife $11,000 of the Edison Pension Trust; otherwise affirmed. Costs, not including attorney fees, to husband.