Argued and submitted October 9, affirmed January 13, 1999

In the Matter of the Marriage of

Norman M. MICHAELS,
*Appellant,*
*and*

Kathryn I. MICHAELS,
*Respondent.*

(96-30526; CA A99619)

970 P2d 692

Thomas E. Elliott argued the cause for appellant. With him on the brief were Raymond M. Cihak and Evashevski, Elliott & Cihak, P.C.

Patrick L. Hadlock argued the cause for respondent. With him on the brief were Larry L. Stuber and Ringo, Stuber, Ensor & Hadlock, P.C.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Husband appeals from the judgment dissolving the 25-year marriage of the parties. He assigns error to the spousal support award and property division. On *de novo* review, we affirm.

The parties were married in 1972 and have no children. At the time of trial, husband was 46 years old, and wife was 48. Husband has a Masters of Science degree and has worked for the United States Forest Service as a forester since 1972. Husband's income is $4,000 per month, and he is in good health.

Wife has a Master's Degree in Spanish and has completed all but her thesis for a doctoral degree in post-secondary education. She has been employed in the educational field since the couple's marriage. At the time of trial, wife was employed in two part-time positions at Linn-Benton Community College and Oregon Coast Community College. Her part-time teaching position at Dallas High School had been terminated due to funding cuts. Wife estimated her remaining teaching positions would bring in an average of $1,244 a month beginning in the fall of 1997.

Wife has a number of medical problems. She has atherosclerotic cardiovascular disease, hardening of the arteries, with intermittent angina. The condition causes chest pain resulting from blockage to the artery or from a spasm of the artery itself. The spasm can occur without exertion, and wife must use nitroglycerine pills or patches two or three times a week. Wife also suffers from transient ischemic cerebrovascular attacks that affect arteries in her brain and cause her to temporarily lose the ability to speak and sometimes to lose motor skills on her left side for 15 or 20 minutes. Those attacks have happened while wife has been teaching. Wife has also suffered from diabetes since she was 17, which is now causing vision problems. She has high blood pressure and high cholesterol. Wife has an increased risk of heart attack, stroke, congestive heart failure, sudden cardiac arrest, myocardial infarction or increased chest pain. Blood thinning treatment has resulted in the danger of increased bleeding, making any type of surgery—even dental—risky.

Wife's treating physician testified that wife's diabetes and other health problems shorten wife's life expectancy by 10 to 18 years.

Wife estimated that her medical costs average $10,000 a year. She receives COBRA benefits from husband's health insurance plan and a plan she previously had with the Salem School District. The two plans cost her $500 a month, and unreimbursed costs, including prescriptions, average about $350 per month. Wife testified that she believes that employers' knowledge of her medical background makes them reluctant to hire her because of potential liability for what might happen in the classroom. However, her physician testified that wife was "doing well" and does not have any reason why she cannot be employed. If wife should become disabled, she will receive disability income of $1,125 per month.

The parties' living relationship during their 25-year marriage was unusual. After their marriage in 1972, the couple lived together in Corvallis until 1977, when husband was transferred to Bly, Oregon. Wife sought work in the Bly area but was unable to find employment. The parties then decided that wife would keep her teaching position in Corvallis. They agreed to separate their finances and support themselves individually, although the bank accounts are in joint names. During the time he was in Bly, husband would travel to Corvallis to stay with wife approximately two weekends per month; wife went to Bly infrequently. Wife testified that she considered they had a "commuter marriage" but did not consider it a "split in the marriage."

When husband was transferred to Lowell in 1980, he traveled more frequently to Corvallis. During that time, the parties built a home on real property that they had purchased earlier in the Corvallis area. Both planned the home and adapted it to wife's physical restrictions, with wide doors and a ramp instead of stairs. Husband acted as general contractor for the home, and wife acknowledged that he put a "great deal" into its construction. In 1985, husband was transferred to Diamond Lake and resumed visiting wife every two weeks. The separate financial arrangement continued, except that husband paid for the house payments, taxes

and insurance. The parties stipulated that the value of the home was $215,000.

The trial court awarded the real property to wife and each party his or her retirement accounts. It awarded savings bonds, the value of which was not shown, to husband. The assets awarded to wife were $328,000 and to husband, $264,351, but the court did not award husband an equalizing judgment. The court awarded wife spousal support of $1,000 per month for seven years and $500 per month indefinitely after that.

Husband first assigns error to the spousal support award. He argues that the parties' "unique relationship separates this case from the standard spousal support analysis":

> "[W]ife did not contribute anything to husband's earning capacity and did not even live with him for most of the marriage. She has supported herself throughout the marriage except for the house payments, taxes and insurance, which she should be able to cover or which should be covered by a much lower support amount of $450 per month."

At the outset, we reject, as did the trial court, that the parties' living and financial arrangements constituted the separation in the parties' lives that husband suggests. On *de novo* review, we find that the couple's arrangement evolved through wife's desire to continue with her professional life and the recognition that that would necessitate her having an income. Nonetheless, through the years husband continued to spend at least every other weekend with wife, and, in the 1980s, they built a jointly owned house that they adapted to wife's physical needs. Husband made the house payments, and the parties planned to spend retirement together. Despite living apart for the majority of the marriage and pursuing their separate careers, which suited both of them, the circumstances show that the parties considered their relationship a marital one.

It is husband's position, however, that a reduced award of spousal support is appropriate because the purpose of spousal support is "not to eliminate all disparities in the parties' incomes or to enable one party to look indefinitely to the other for support," *Ley and Ley,* 133 Or App 138, 141, 890 P2d 440 (1995), and wife has the education and experience

that should enable her to support herself. However, in this instance, we conclude that it is not reasonably possible to end the "support-dependency relationship." *Id.* at 142. Although wife has worked throughout the marriage, there is a large disparity in their incomes. Moreover, throughout the marriage wife has not, as husband contends, been completely self-supporting. Since the mid-1980s, husband has made the house payments and has had medical benefits, which are available to wife, from his employment. Although husband is correct that wife's health does not prevent her from working in her profession, it is also apparent from the record that wife's health problems make it unlikely that she will have increased employment opportunities. As structured, the spousal award will allow wife to enjoy a standard of living not overly disproportionate to that which she enjoyed during marriage. *Richardson and Richardson*, 307 Or 370, 769 P2d 179 (1989). The court's award here is just and equitable under the circumstances, and we decline to disturb it.

■       Husband also assigns as error the court's failure to divide the marital assets equally. He contends that he should have received an equalizing judgment of $40,045, specifically arguing that, "[i]f anything, [he] should have a greater portion of the equity in the real property because he made significantly greater contributions to its acquisition than wife."

The trial court awarded wife the "long half" of the assets because of wife's health difficulties and "her need to be able to, in part, perhaps rely on that equity in the home[.]" We have previously recognized that an award of the long half of marital assets is justified in circumstances where the spouse is in poor health. *Hansen and Hansen*, 102 Or App 681, 795 P2d 609, *rev den* 311 Or 13 (1990); *Glatt and Glatt*, 41 Or App 615, 598 P2d 1237 (1979). Husband argues, however, that his position is supported by *Wilson and Wilson*, 152 Or App 454, 954 P2d 212 (1998), where we divided marital property equally although the parties had been married 20 years and husband had a substantially greater earning capacity than wife. However, as wife points out, in *Wilson*, the wife was 39 years old and in good health. Here, wife is 48, with significant physical problems. We reject husband's contention that, under these circumstances, an equalizing judgment should be awarded.

■ Husband's final assignment of error is that the court erred in failing to discount the parties' retirement accounts for taxes. It is husband's position that the failure to do so resulted in his receiving even less in the division of property. We find no error. A court may consider tax consequences; it is not required to do so. ORS 107.105(2). Husband testified that he calculated a 30 percent tax liability on his retirement payments, but there was no expert testimony here as to what the tax consequences on each pension would be. The trial court found that both parties would be affected by taxes but declined to discount the accounts or to discount wife's account for her reduced life expectancy. It awarded each party his or her retirement account. We find no error in the court's decision to use the full value of the parties' retirements in making the property division.

Affirmed.