Argued and submitted June 7, affirmed as modified and remanded
December 21, 1982

# In the Matter of the Marriage of

JENKS,
*Petitioner on review,*
*and*
JENKS,
*Respondent on review.*

(CA A20529, SC 28485)

656 P2d 286

J. W. Walton of Ringo, Walton & Eves, P.C., Corvallis, argued·the cause and filed the petition for petitioner on review.

Michael F. McClain of McClain & Brown, Corvallis, argued the cause for respondent on review.

TANZER, J.

Peterson, J., filed a specially concurring opinion.

**TANZER, J.**

This dissolution case involves property division, spousal support and child support. We allowed review to consider whether property acquired by one spouse as a gift is to be deemed a "marital asset" as that term is used in ORS 107.105(1)(e). We have since held in the factually simpler case of *Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982), that property acquired by one spouse through inheritance during the marriage is a marital asset. This case presents the further issue of distribution of assets acquired by gift in a more complex context of an involved financial history and the need for spousal and child support.

We accept the facts found by the Court of Appeals and stated in its opinion:

"The decree ended the 13-year marriage of husband, age 34, and wife, age 33. The parties have four children, who were ages 12, 11, 5 and 3 at the time of the hearing. Husband has a college degree in business administration, and wife, a high school graduate, some years ago completed a five-month course of training to be a dental assistant.

"Husband is vice-president of Jenks-White Seek Company, a closely held family corporation. In 1979, he received a salary of $21,500, a bonus of $1,500, and $2,700 in Naval Reserve pay. After two and one-half more years of Naval Reserve duty, he will qualify for retirement benefits (which will mature when he reaches 60) of about $350 per month. He also has a vested but unmatured interest in the company's retirement plan. Except for the first year of the marriage, wife has not worked outside the home.

"The parties began their marriage with no substantial assets. In 1973, they moved into a dilapidated farmhouse owned by husband's father and grandmother that had 'blackberry vines in the stairways and rats in the attic.' It was built in 1852 and had always been in husband's family. In 1974, the house and 10 adjoining acres were deeded to husband as a gift from his father and grandmother. The next year, the grandmother deeded husband an additional 67 acres of land. These properties are held in husband's name alone. In 1977, the house and the 77 acres were mortgaged in order to remodel the farmhouse and to purchase an additional 97 acres from husband's

stepmother. The loan was taken in both parties' names, and title to the new acreage is held by husband and wife jointly. The balance on the loan at the time of the hearing was $122,430.57, with annual payments of about $10,450. One hundred sixty-four acres of the property are rented out at $40 per acre, and the income has been applied to the mortgage, leaving a net difference of about $350 payable each month on the mortgage.

"The trial court awarded wife the home and 10 acres, valued at $158,480, a savings account of $1,040, a 1978 Dodge, the household goods and furnishings, some personal property and antiques. Husband was awarded the remaining 164 acres of real property, valued at $287,000, a savings account of $4,200, a 1951 Chevrolet, a 1929 Plymouth, a boat, tools, and some personal property and antiques. He was also awarded bank stock worth between $3,960 and $4,300 and his remainder interest in 300 shares of the Jenks-White Seed Company. Husband was ordered to make the mortgage payments on all of the real property and the payments on wife's car. Assuming no value attributable to the company's stock or husband's retirement plan, the result was an approximately equal division of the property.

"The court also awarded the parties joint custody of their children with 'residential custody' to mother and, as a condition of mother's custody, required that she maintain residence in Linn or Benton counties. Husband was ordered to pay $300 per month spousal support for 10 years and $125 per child per month child support and to maintain medical and dental insurance for the children." (Footnotes omitted.) 55 Or App at 826-27.

The Court of Appeals upheld the property division, upheld the award of spousal support, awarded sole custody to wife and remanded for reconsideration of child support in light of *Smith and Smith*, 290 Or 675, 626 P2d 341 (1981). The husband petitions for review contending that he is entitled to ownership of the house and acreage in his name and that his support obligation is excessive in light of his ability to pay.

The personal property was divided approximately equally and there is no reason to disturb that part of the award. We also uphold the division of real property by the Court of Appeals, but on somewhat different reasoning.

The real property in contention consists of the home and surrounding 10 acres in husband's name, the 67 acres also in husband's name and the 97 acres in both names. We begin our review of the property division by reference to the governing statute, ORS 107.105(1)(e), which now provides:

> "Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:
>
> \* \* \* \* \*
>
> (e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property. The court shall require full disclosure of all assets by the parties in arriving at a just property division. In arriving at a just and proper division of property, the court shall consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties."

■ ■ As we held in *Pierson,* any property owned by either party is subject to the dispositional authority of the court pursuant to the first sentence of ORS 107.105(1)(e) and property acquired by either party during the marriage is a marital asset as that term is used in the statute. That is true even if the acquisition is by inheritance as in *Pierson,* and equally if the acquisition is by gift as in this case. Thus, in this case, the wife is entitled to the benefit of the statutory rebuttable presumption of equality of contribution and the husband is entitled to the tax benefit of the ownership provisions of the statute if the property in his name is awarded to the wife.

The statutory presumption of equality of contribution to the acquisition of marital assets, as we stated in *Grove and Grove,* 280 Or 341, 346, 571 P2d 477, *reh den and modified* 280 Or 769, 572 P2d 1320 (1977), "indicates a legislative intent that the homemaker spouse who is most likely to seek spousal support, be recognized as an economic contributor to the marriage rather than as a passive recipient of economic benefits provided by the breadwinner." It would apply, for example, to a distribution of marital assets purchased with the earnings of one spouse. In the absence of evidence to the contrary, the presumption would require a holding that a non-earning spouse's efforts contributed to the accumulation of family property. The presumption may be overcome, however, by a finding that property was acquired by one spouse by gift or inheritance, uninfluenced by the other spouse. In such a case, there has been no economic or other contribution by the other spouse to the acquisition of the asset.

Here, we must apply the presumption to all the marital assets including the house, 10 acres and 67 acres in husband's name. Had husband's title been the only evidence regarding that property, the presumption of equal contribution to acquisition would require that the property be subject to equal division, absent other factors. *See, Pierson and Pierson.* The fact that it was acquired by gift, free from any finding that the gift was related to wife's efforts or that wife was an object of the donative intent, overcomes the statutory presumption.[1] Therefore, wife is not entitled by virtue of the statutory presumption to share in the distribution of the value of that real property as of the date of its acquisition.[2]

Overcoming the statutory presumption of equality of contribution does not end our inquiry. The presumption is only one consideration in determining a property division

---

[1] Evidence that the gift was to the family rather than solely to husband was not accepted by the trial court or the Court of Appeals, *see* 55 Or App at 826, n 2. The point turns on an assessment of credibility by the trial court. We find no persuasive reason in the record to overturn the trial court's finding.

[2] The Court of Appeals reasoned that wife's efforts in the improvement of the property established the fact of equal contribution. In our view, efforts expended after acquisition are relevant to division of the value of improvements or appreciation, but do not affect the preceding acquisition.

which is "just and proper in all the circumstances." Although wife is not entitled to share in the husband's house and acreage by virtue of the statutory presumption, other equitable reasons dictate the same result.

When couples enter marriage, they ordinarily commit themselves to an indefinite shared future of which shared finances are a part. Acquisitions are made, foregone or replaced for the good of the family unit rather than for the financial interests of either spouse. Property is bought, sold, enhanced, diminished, intermixed and used without regard to ease of division upon termination of the marriage. All this may be modified by agreement, of course, but, by the nature of the marital relationship, couples ordinarily pledge their troth for better or worse until death parts them and their financial affairs are conducted accordingly.

If the marriage is terminated before the parties' financial affairs become commingled or committed to the needs of children to the point that the parties cannot readily be restored to their pre-marital situations, then property division is a relatively simple task in the nature of a rescission. *See, York and York,* 30 Or App 937, 569 P2d 32 (1977). That, rather than any specific number of months or years, is what we mean by a "short-term marriage." With each common financial act or decision, however, the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult. The origin of each item becomes less significant in the overall task of making a property division which is "just and proper in all the circumstances." This marriage is an example of one in which finances have become interrelated past the point of simple extrication.

Here, although husband's house and adjoining acreage are in husband's name as a result of gift, husband and wife contributed by their joint labor and expenditures to the conversion of the family home from its dilapidated state to its present comfortable, more valuable condition. There was no need to purchase a family home in both names because the husband's house was available for that use. Funds that might have been dedicated to that purpose went instead to purchase the jointly owned 97-acre addition

and husband's house and acreage were pledged to secure that purchase. The children of both parties are being raised in the house without regard to which parent holds title. Unlike the inheritance in *Pierson,* this donated property has been integrated into the common financial affairs of the parties and their children. We conclude that it is properly a part of the property division equation.

Here, unlike *Pierson,* the marital assets are capable of roughly equal division. The trial court and the Court of Appeals made it by requiring husband to transfer his interest in the home and surrounding 10 acres to wife and requiring wife to transfer her interest in the 97-acre tract to husband. The obvious purpose in awarding wife the family home is to provide a residence for the children. We could award the 164 acres to wife and the home and surrounding 10 acres to husband. The trial court's award was apparently made in recognition of a need for a degree of stability for the children in an unstable time. While this may be a bitter sentimental disappointment to husband, we have no compelling reason to disturb that determination.

We are required by ORS 107.105(1)(e) to consider tax consequences in formulating the award. An effect of designating husband's property a marital asset is to render it held in "a species of co-ownership" subject to "partitioning of jointly owned property." *Engle and Engle,* 293 Or 207, 646 P2d 20 (1982). Thus the transfer will theoretically generate no present tax liability.[3]

Husband urges alternatively that he be allowed to retain ownership of the family home subject to wife's right to live there during the minority of the children. The proposal would continue a relationship between the parties, where the predominant purpose of a dissolution is to sever the parties to the greatest extent possible. As the Court of Appeals said in *Slauson and Slauson,* 29 Or App 177, 183-84, 562 P2d 604 (1977):

> "* * * [I]n dividing the property the dissolution decree should seek to disentangle the parties' financial affairs and make them free from each other's interference. * * *"

---

[3] Although I questioned the correctness of the tax holding in *Engle, see* my dissent, I accept it as a controlling precedent in this case.

If the house becomes unsuitable, under husband's proposal wife would have no ability to use the house to obtain another home for herself and the children. Furthermore, husband would have no assurance that wife, as a tenant, would maintain the house satisfactorily. Simple ownership is a preferable way of severing the parties' financial interdependence. Although the house and 10 acres remain subject to the mortgage, entanglement to that degree is unavoidable.

■ We cannot ignore the sentimental value of the house and 10 acres to the husband after 130 years of family ownership, however. We therefore modify the decree to require that husband have a right of first refusal, exercisable within 60 days of written notice of impending sale, in the event wife seeks to sell the property.[4]

Finally, husband complains that his child support and spousal support obligation is too high, leaving him only $115 per month on which to support himself. Three hundred fifty dollars of his expenses go to mortgage payments for the purchase of the 97-acre tract. He has the option of selling the property to free the equity for some other form of investment.[5] Even so, a monthly support obligation of $800 (plus insurance) and $134 payments on wife's car payable from income of $1,399 will be difficult to meet. The remand by the Court of Appeals for reconsideration in light of *Smith and Smith,* 290 Or 675, 626 P2d 341 (1981), is not challenged on review. We trust that upon remand the total support obligation will be material to the reconsideration.

Affirmed as modified and remanded. Costs to respondent on review.

**PETERSON, J.,** specially concurring.

I concur in the result. I do not concur in the majority's analysis. The majority concludes that the marital assets[1] should be equally divided. Its analysis is as follows:

---

[4] Upon remand, an appropriate provision shall be inserted in the decree spelling out the right of first refusal. If the parties cannot agree upon appropriate terms, the trial judge shall specify the terms of the right of first refusal.

[5] We assume the present depressed market is not a permanent condition.

[1] I use the term "marital assets" in the technical meaning it was given in *Pierson and Pierson,* 294 Or 117, 121-22, 653 P2d 1258 (1982).

1. The rebuttable presumption of equal contribution arising from the third sentence of ORS 107.105(1)(e) has been "overcome."

2. "Although wife is not entitled to share in the husband's house and acreage by virtue of the statutory presumption, *other equitable reasons dictate the same result.*" (Emphasis added.) 294 Or at 242.

3. "If a marriage is terminated before the parties' financial affairs become commingled or committed to the needs of children to the point that the parties cannot readily be restored to their pre-marital situations, then property division is a relatively simple task in the nature of a rescission." 294 Or at 242.

4. "Property is bought, sold, enhanced, diminished, intermixed and used without regard to ease of division upon termination of the marriage. * * * With each common financial act or decision, however, the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult." 294 Or at 242.

5. "* * * [T]his donated property has been integrated into the common financial affairs of the parties and their children. We conclude that it is properly a part of the property division equation." 294 Or at 243.

The majority opinion says that if the parties have "integrated" their financial affairs, particularly if there are children, for "equitable reasons" the property will be divided. The duration of the marriage is not a significant factor in the majority's analysis. Focusing upon the confusion of marital assets is neither a straightforward nor a productive way to analyze the problem. A clearer and more logical analysis can and should be made. Irrespective of the length of the marriage, "integrated" financial affairs will have to be "disintegrated" or "unintegrated."

I will assume, for the sake of argument, that the rebuttable presumption has been "overcome."[2] Even if the

---

[2] Strictly speaking, upon a showing that the property was received as a gift, the rebuttable presumption has been overcome as to both the husband and the wife. Neither spouse "contributed" anything to the acquisition of the donated property.

rebuttable presumption has been overcome, the second sentence of ORS 107.105(1)(e) still requires that "[t]he court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets." That sentence requires that the court consider the 13 years of contribution by the wife as a homemaker. Because of the duration of the wife's homemaking contribution, an equal division is appropriate in this case.

Suppose that the husband and wife in this case had lived in a rented house during the entire marriage, that a house and 10 adjoining acres were given to the husband as a gift, that an additional 67 acres were given to the husband as a gift the following year, and that the income from the rural properties was exactly enough to pay all expenses on those properties. Suppose further that the wife never had anything to do with the rural properties. Finally, suppose that the rural properties are the only substantial asset in the marriage. I suggest that this court would order that the properties be divided about evenly because the wife made a substantial "contribution * * * as a homemaker," and because the marriage is of moderate duration, 13 years.

Even though ORS 107.105(1)(e) makes no explicit reference to "the duration of the marriage,"[3] the quantum of a spouse's contribution as a homemaker is directly related to the period of time the contribution was made. The extent to which "the finances of the parties * * * become more interrelated, and extrication upon dissolution becomes increasingly difficult" (majority opinion at 242), largely is a product of the duration of the marriage, and is not an independent justification or reason for dividing the

---

[3] *Compare* ORS 107.105(1)(c), which concerns support awards and which makes specific reference to "the duration of the marriage." *See Glatt and Glatt,* 41 Or App 615, 598 P2d 1237 (1979), in which these statements were made:

"* * * We have stated that the factors ORS 107.105(1)(c) mentions with respect to spousal support determinations, while not controlling, provide useful guidance in property divisions. * * *

"In dissolution cases involving marriages of long duration, the courts have consistently been less concerned with identifying the relative contributions of the parties than they have been with ensuring that the parties separate on as equal a basis as possible, under the circumstances. * * *" 41 Or App at 621, 622.

assets equally. Were this a marriage of only one or two years, assuming a mixture of marital assets similar to those at bar, the result would be different. The division of property resulting from such a brief marriage would be markedly different from the result in this case because the wife's contribution as a homemaker would be less than the wife's contribution in this case, not because of the presence or absence of commingled assets.

The majority opinion gives little direction to judges, lawyers and parties in an area of the law in which guidance is needed. The extent to which the assets have been commingled has little relevance to the division of property.[4] Our holding should be that in considering "the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets" (which ORS 107.105(1)(e) requires us to do), the longer the homemaker spouse contributes, the greater is the homemaker's entitlement to a share of the property.

---

[4] If a husband and wife each brought cash into a one-year marriage and an asset were purchased, with one spouse paying 90 percent of the purchase price, we would not divide the asset equally because their assets had become "interrelated and extrication * * * difficult." We would attempt to restore them to their respective positions before marriage because of the short duration of the marriage.