Argued and submitted July 16, 1986, affirmed as modified May 13, reconsideration denied June 26, petition for review denied August 24, 1987 (304 Or 55)

In the Matter of the Marriage of

McGOLDRICK,
*Respondent,*
*and*
McGOLDRICK,
*Appellant.*

(84-6-230; CA A37502)

736 P2d 622

Edwin J. Welsh, Lake Oswego, argued the cause and filed the brief for appellant.

John W. Lundeen, Lake Oswego, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

Joseph, C. J., dissenting in part; concurring in part.

## RICHARDSON, P. J.

Wife appeals the property division and spousal support provisions of a dissolution judgment. She also contends that the court erred in denying her motion to set aside the judgment and grant her a new trial. We modify the judgment.

The parties' 33-year marriage was dissolved in 1985 after a three-year separation. At the time of trial in 1985, husband was 55 and wife was 53. Husband has been a high school teacher for approximately 28 years and in 1985 grossed $32,568 in salary and approximately $50 per month in interest income. He testified that he intended to retire at the end of the 1985-86 school year, at which time he would be entitled to PERS benefits.

Wife's primary role has been as a homemaker and the mother of the parties' four children. The children are all grown. She has a college degree but has had only limited employment outside the home. In the late 1970's she was a substitute teacher. After the parties permanently separated in 1982, she updated her teaching certificate but did not seek employment, because she was told that there was a surplus of substitute teachers. She has health problems relating to the blood circulation in her feet and legs.

Wife, in the 1970's, inherited some property from her mother. By the time of trial, the inheritance had been converted to cash and was deposited in a savings account with a balance of $24,298. She earns approximately $200 per month interest on the account. After the separation, but before trial, wife put the savings account in trust for her four children. The trust is revocable and wife is able to use the income and corpus of the trust. She testified that she intended for the balance of the account to go to the children at her death.

In 1973, husband inherited from his father several large parcels of real property located in three counties in Eastern Oregon. The parcels are separately usable for timber, mineral exploration and farming. He had to pay a substantial inheritance tax at the time he acquired the land. He has worked on the property sporadically since he inherited it, and at the time of trial it was being rented. The net income from the properties after deducting expenses and depreciation was approximately $200 per month in 1985. The parcels have a

total value of $247,997. Husband testified that he intends to live on and to farm the property after he retires.

In 1981, husband consulted an attorney regarding an estate plan and, principally, a means of transferring the Eastern Oregon land to his children. He expressed concern to the attorney that, if he died with or without a will, wife might acquire and sell the property and the children would not inherit it. He also was concerned that a transfer by will or an intestate transfer would result in inheritance taxes comparable to the amount that he paid on his father's death. Husband and the attorney both testified that there was no discussion regarding a marriage dissolution or regarding a means of preventing wife from acquiring any interest in the property upon dissolution of the marriage. The attorney advised husband to convey the property to the children and reserve a life estate.

The parties separated in the summer of 1982, and in August, 1983, the attorney, at husband's request, prepared the documents transferring the Eastern Oregon property to the four children with reservation of a life estate in favor of husband. Husband did not tell wife or the children about the deeds. One year later he filed the petition for dissolution. When wife learned of the transfer, she told the children; they told her that they would not reconvey the property to husband.

At trial, wife argued that the transfer was fraudulent and should be set aside in order that the property could be considered as marital property in the property distribution. Alternatively, she asked that, if the transfer was not set aside, that the value of the property be credited to husband in the distribution and that she receive an off-setting judgment to equalize the accounting.

The trial court concluded that the property should be considered husband's under the analysis in *Jenks and Jenks,* 294 Or 236, 656 P2d 286 (1982), and that the deed to the children was not fraudulent and should not be set aside. The court found:

"1. The property has been in the petitioner's family for over a hundred years.

"2. Wife showed no past interest in the property.

"3. Wife was not an influencing factor to encourage the

inheritance, i.e., was not intended by the donor that wife share the ownership.

"4.    Wife was not close friends with husband's parents.

"5.    The gift was to the husband alone.

"6.    There was never any intent from the husband to recognize wife as an owner.

"7.    The business of operating the farms was kept separate from the usual family business activities.

"8.    The husband has irrevocably deeded the property to the children, reserving a life estate in himself.

"9.    Other than as a conclusion from the wife, there is no evidence that the conveyance to the children was fraudulent. (If fraud has to be proved by clear and convincing evidence, wife's claim must fall, for this reason alone because there is no evidence of fraud. Further, the children were not even aware of the transfer.)"

Wife argues that the circumstances surrounding the transfer of the property prove that it was done in order to deprive her of any interest in the property in the event of dissolution or death of husband. She contends that the deed was fraudulent and should be set aside. At oral argument in this court, wife conceded that the deed could not be set aside, because the grantees were not made parties to this proceeding. She contends, however, that the property should be treated as if it were still in the marital estate and that, although husband should be awarded all the remaining interest in the property, she should be given an offsetting money judgment, which she calculates to be approximately $74,000.

■    We conclude that the transfer was not designed solely to defeat wife's claim to the property in the dissolution proceedings. The property had been in husband's family for approximately 100 years, and both he and wife testified that it was always their intent that it pass to the children. Husband and the attorney who prepared the deeds testified that the discussion centered around a transfer of the property which would avoid inheritance taxes, and they both stated that there was no discussion regarding dissolution of the parties' marriage or preventing wife from sharing in the property upon dissolution. Wife argues that the timing of the transfer—one year after they separated and one year before husband filed the petition for dissolution—and its secrecy demonstrate a

fraudulent intent. Husband had discussed the transfer with the attorney in 1981 before the parties separated. The deeds were prepared in 1983 without further discussions between husband and the attorney. The timing of the transfer in relation to the dissolution proceedings does not demonstrate a fraudulent motive. It is not unusual that husband would make the transfer without discussing the matter with wife or the children. Although the parties had not separated at the time when husband consulted the attorney, they were having marital problems. Husband was aware that wife also intended that the property should go to the children. Even though the plan was not discussed with the family, it was consistent with the parties intended estate plan. The fact that the transfer was made without consideration from the children is certainly not an unusual occurrence.

Husband has made an irrevocable transfer of the property to the parties' children. The life estate which he reserved allows him to use the property, limited by the rights of the holders of the remainder interest. He retained no benefit from the transfer other than the life estate, and the transfer benefitted persons whom both he and wife agree should be benefitted. If we divide the property as suggested by wife and award her an offsetting judgment, there will be no assets from which that judgment can be satisfied. Husband, as life tenant, will be unable to sell the property or mortgage it to pay a judgment to wife. If he prevails on the children to reconvey the property to him so that he can mortgage or sell it to pay the judgment, the estate plan will be defeated. Wife would benefit in the amount of the judgment with a corresponding ultimate loss to the children.

The court awarded wife one-half of the taxable net income received from "rents, agricultural activity, timber harvests and/or mineral sales" from the Eastern Oregon properties. That will allow wife to share in the proceeds from the life estate retained by husband. Wife contends that it will allow husband to manipulate the expenses and cash flow of the operation to reduce the net income and that she could receive very little. It may be difficult to devise a formula that will correctly reflect the usable net income of the life estate. We conclude that the net income for the purposes of paragraph 2.b. of the judgment should be the income before the deduction

of any depreciation or the distribution of any income to husband. With a modification consistent with that definition of net income, we affirm the balance of the property distribution.

Wife moved to set aside the judgment and for a new trial on the basis of newly discovered evidence. The evidence claimed to be newly discovered was some letters written by wife to husband's parents and received from them. She argues that they demonstrate a close relationship, contrary to husband's contention during trial and the court's findings. We conclude that the court did not abuse its discretion in denying the motion.

Finally, wife contends that the spousal support provided is insufficient. The court awarded her $600 per month until August, 1986, which the court concluded was the time when husband would retire, and $175 per month thereafter. Wife requests $1,500 per month permanent support. Husband's net income from teaching is approximately $1,700 per month and he additionally earns $50 per month interest income and, in 1985, $200 per month from the Eastern Oregon property. It is unrealistic to require that he pay $1,500 per month support. As the trial court did, we accept husband's statement regarding his plan to retire in August, 1986. At that time his teaching salary was to be replaced by monthly retirement benefits. There is no evidence in the record as to what the monthly benefit would be, but it most certainly will be less than his monthly salary.

Wife has scant employment history and has medical problems that will affect her employability. She has been aware since late 1981 that the marriage was breaking up, but she has done little to seek employment or any means to contribute to her own support. There is little question that in this long term marriage she has in fact foregone employment opportunities and is entitled to permanent support. The difficulty is that there is not enough income to provide separately for both parties lifestyles comparable to what they enjoyed together. Of necessity, wife will have to provide a substantial part of the money to meet the expenses which she claims.

We conclude that wife is entitled to support in the amount of $600 from the date of the original judgment until husband retires, after which the amount shall be one-half of the monthly PERS benefits husband receives, less any income

taxes attributable to the benefits. The amount of spousal support, however, shall not exceed $600 per month.

Judgment modified to provide that "net taxable income" in paragraph 2.b. be income before deduction of any depreciation and any distribution of income to husband; to award spousal support of $600 per month from the date of the original judgment until husband retires, after which it shall be $600 per month or one-half of husband's monthly PERS benefits after deduction for taxes, whichever is less; affirmed as modified. Costs to wife.

**JOSEPH, C. J.,** dissenting in part; concurring in part.

Wife contends that the court erred in not considering the transferred property in dividing the marital estate. The trial court noted that ORS 107.105(1)(f) provides for a rebuttable presumption of equal contribution to all property acquired during the marriage, regardless of who holds title, and said that it found certain facts sufficient to support husband's claim of sole entitlement to the property. Even if we were to agree with the trial court that the presumption of equal contribution was overcome, *see Jenks and Jenks,* 294 Or 236, 241, 656 P2d 286 (1982), the inquiry does not end there. The statutory presumption is only one consideration in making a property division which is "just and proper in all the circumstances." *Jenks and Jenks, supra,* 294 Or at 242.

The trial court concluded that equity was being done, because wife would share in any profits made from the farm part of the inherited property by reason of the award made from that source and because the court also awarded wife her own inheritance of $24,298. The failure of the trial court to include the value of husband's inherited property in dividing the marital assets was error.[1]

After the conveyance of the inherited property, husband continued to treat it as his own. There is conclusive evidence that the only real purpose of the transfers was to

---

[1] Property awarded wife, including the Portland home and her inheritance, had a value of $106,323. Property awarded husband, including the money in his PERS account, had a value of $69,750. No valuation of his retirement *benefits* was offered. These figures ignore his inherited property.

defeat any claim of wife either in the event of a dissolution or on husband's death. Although the conveyances are absolute in form, their purpose and the secrecy persuades me that the children were not intended to have any benefit, economic or otherwise, during husband's life and that he intended to go on treating the property as his own as long as he lived. That he might not have always been able to do that without the children's knowledge and cooperation is only marginally relevant to what would be fair and equitable in the circumstances. The majority, significantly, points to nothing that indicates that husband *ever* intended that the children even know about the transfers during his lifetime.[2]

Wife would have us set aside the conveyances as fraudulent, but we cannot do that without the grantees being parties in this case. Had husband not conveyed it away, I would conclude that wife would have been entitled to a share of the inherited property. His unjustifiable actions to defeat her entitlement should not be permitted to achieve their intent. If the inherited property's agreed value is included in the division, the disparity in awards between husband and wife is $201,434 in his favor. There is not sufficient other property out of which to rectify the balance, either in quantity or kind. Nonetheless, a balance needs be found. I would award her a judgment, with interest at the legal rate from the date of the original judgment, payable in full not later than July 1, 1990, in addition to the property awarded her by the original judgment.[3]

I agree with the majority on the issue of support.

---

[2] Had husband died after the conveyances and before the dissolution, it is doubtful that his plan to defeat wife would have succeeded. *See Halleck v. Halleck et al,* 216 Or 23, 337 P2d 330 (1959).

[3] Although it means well, the majority would define "net taxable income" in a way that might well encourage husband, by the manipulation of expenses, to continue to cheat wife.