342

Argued and submitted October 16, 1991, spousal support modified; otherwise affirmed April 22, 1992

In the Matter of the Marriage of

Norman Edward COOTE,
*Appellant,*

*and*

Jo Ann Kay COOTE,
*Respondent.*

(DR-90-5-89; CA A68150)

831 P2d 32

Joseph E. Penna, Monmouth, argued the cause and submitted the brief for appellant.

Gilbert B. Feibleman, Salem, argued the cause for respondent. With him on the brief was Ramsay, Stein & Feibleman, P.C., Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Husband challenges the distribution of property and the award of spousal support to wife in this dissolution of a 16-year marriage. We review *de novo*. ORS 19.125(3).

The parties were married in 1974. Husband is a 53-year-old college graduate who appears to be in good health and is an exceptionally talented machinist, builder and inventor, capable of generating an annual income in excess of $45,000. Wife is a 44-year-old high school graduate who has little to offer in the labor market by way of training and experience. She suffers from high blood pressure and a heart condition that prevents her from maintaining full-time employment for an extended time.

Throughout the marriage, husband operated a business, building belt sanders and small airplane parts and doing development tooling for a company that designs microchips. During the last 5 years of the marriage, his net annual income from that business declined from $8,381 in 1985 to $3,647 in 1989. In 1988, his work for the microchip company ended. Soon after that, he moved away from his family to another city in Oregon to accept employment as a tool maker. He earns $16 per hour in that job and currently nets about $300 per month from his business. The total income reported on the parties' joint tax return for 1988 was $27,754. Although husband earned $47,350 in 1989 by working overtime, he reduced his working hours in 1990. His August, 1990, Uniform Support Affidavit reported his monthly income from employment, business and investments as $2,824.60. A revised affidavit, in December, 1990, reported an average monthly income of $1,856.06.

Although the parties had no children together, wife has 2 children from a previous marriage. Her daughter is 21 years old and a senior in college. Her son is 18 years old and a senior in a private high school in Sunriver. Throughout the marriage, wife worked as a homemaker. She received monthly Social Security payments for the support of her children, whose father had died. Those payments constituted approximately 2/3 of the family's net income during the children's minority. The checks were deposited directly into an account controlled by wife, but the money was then

automatically transferred to the parties' joint checking account, from which husband paid the bills. Sometimes wife did babysitting and housecleaning to earn extra money to help pay tuition for her children's private schooling. In 1987, she began to work part time as a sales clerk. In 1989, she reported a gross income of $7,986, and she continues to earn approximately $662 per month at that job. She also earns an average net income of between $100 and $300 per month from housing student boarders. Her son, who still lives at home, contributes $400 of his Social Security money each month for household expenses.

Both parties contributed substantial money and effort to the acquisition of marital assets. Husband assigns error to the trial court's award to wife of $51,427 in trust assets and an equalizing judgment of $15,450. Sometime during the marriage,[1] husband's father named himself and husband as joint owners of an investment account. A few days before his death in 1987, the father re-registered that account in husband's name alone. In February, 1989, husband established a revocable living trust, which he argues is his separate property because, he alleges, the corpus of the trust is comprised of his father's investment account that was transferred as a gift to him alone. Wife testified that she believed that the corpus of the trust included money from her children's Social Security checks. The trial court found that the trust assets "are rooted in gift-like transfers to husband from his father and/or mother. All of these items are marital assets, having emerged long before the marital breakup."

■■  ORS 107.105(1) provides, in part:

"Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

---

[1] Two statements are attached to the father's request to register an account under husband's name only. The account that includes husband's name is dated November 20, 1986, and shows a zero balance forward on January 1, 1986, and no transactions during the year until the direct purchase of shares on November 20, 1986. That suggests that November 20, 1986, was the date that father opened the account. Husband produced no evidence to show that the joint account was created before the marriage.

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

That statute confers authority over 2 kinds of property: "the real or personal property, or both, of either or both of the parties" and "marital assets." Assets belonging solely to either party *may* be disregarded in the property distribution, but they are nonetheless subject to disposition by the court. *Pierson and Pierson*, 294 Or 117, 121-22, 653 P2d 1258 (1982). Property that one spouse acquired by gift during the marriage, however, is rebuttably presumed to be a marital asset obtained as a result of equal contributions by husband and wife. *Jenks and Jenks*, 294 Or 236, 240, 656 P2d 286 (1982). Husband has the burden to prove by a preponderance of the evidence that the donor intended the gift to be for his benefit alone. OEC 308; *Stice and Stice*, 308 Or 316, 326, 779 P2d 1020 (1989).

We find little evidence in the record that supports the trial court's finding that the corpus of the trust assets "are rooted in gift-like transfers to husband from his father and/or mother."[2] We need not disturb that finding, however, because, even if it is true, husband's only evidence that his parents did not intend the gifts to be for the benefit of both parties is that the property is in his name alone. That is insufficient to rebut the presumption of equal contribution. *Jenks and Jenks*, supra, 294 Or at 241. Moreover, the trial court found, and we agree, that "[w]ife's relationship with husband's parents was one of mutual love and affection as was the relationship between wife's children and husband's parents." The gifts were influenced directly or indirectly by

---

[2] Husband produced evidence of only one Franklin Fund account that came from his father, and it has a different account number than the 4 accounts that comprised the initial corpus of the trust. We find it unlikely that the gift account, worth $29,000 in November, 1986, produced the income deposited in the variety of accounts used to establish the trust that had a total value of $86,339.60 in June, 1988. Suffice it to say that husband did not produce credible evidence to show any particular source for most of the trust assets.

wife's contribution and were not intended solely for the benefit of husband. *See Stice and Stice, supra,* 308 Or at 325.

■     Husband argues that, even if the property distribution is otherwise proper, the equalizing judgment in wife's favor should be eliminated. The trial court ordered distribution of marital assets in a way that leaves each spouse with equal values, yet tends to minimize disruption to the parties' current living situation. To divide the assets equally without the equalizing judgment, we would have to select assets that are in husband's possession and distribute them to wife. The equalizing judgment allows husband to decide which of the assets in his possession he wishes to liquidate or to make other financial arrangements for payment instead of liquidating assets. Because the trial court's scheme is not demonstrably inequitable, we will not disturb it. *Pierce and Pierce,* 70 Or App 24, 27, 688 P2d 114 (1984).

■     Husband also assigns error to the award of spousal support of $1,100 per month for 54 months and $750[3] per month thereafter. The trial court based the award on these factors:

"1.     The length of the marriage.

"2.     The poor health of the wife.

"3.     The disparity in education.

"4.     The disparity in training and work experience.

"5.     The marked disparity in comparable earning capacity, including wife's inability to work full time or become self supporting.

"[6].     The use of wife's children's Social Security benefits for purposes of the husband and husband's promises to adopt and provide for the education of such children and wife's reliance [thereon]."

Husband argues that "the record is completely void of any medical evidence, documentary or otherwise, to support a finding that wife is in poor health."[4] He also argues that the record indicates that she is capable of working full time and

---

[3] We note that the judgment provides a stepdown to $650 per month, but the parties' briefs and the trial court's memorandum opinion all use $750 as the correct figure, and on *de novo* review we adopt $750.

[4] Husband also complains that the trial judge "interjected himself into the record by routinely undertaking the examination of witnesses and commenting upon the evidence presented." He does not, however, explain why that constitutes reversible error. *See Wrona and Wrona,* 66 Or App 690, 692, 674 P2d 1213 (1984).

that his failure to adopt the children, his use of the Social Security benefits and wife's reliance on his promise to save for the children's education are not relevant to the support issue.

■ We agree that husband's use of the children's Social Security benefits during the marriage is not a reason to increase spousal support in these circumstances. Wife contributed that money for family expenses and thereby made it marital income. Even if husband used it to acquire real estate and shares in investment accounts, as she alleges, those assets are marital property that the court has divided equally between them. Investing in marital property was not improper or inconsistent with a promise to save for the children's education. Therefore, the trial court erred in considering that as a factor in the award of spousal support.

■ The trial court properly considered that wife has 2 children attending school whom she is supporting in part. However, it also had to consider the family's standard of living during the marriage. ORS 107.105(1)(d)(K). We can only speculate about what effects husband's adoption of the children would have had, including on the family's standard of living. Therefore, the trial court improperly considered failure to adopt as a factor in this case.

■ Husband argues that the record contains insufficient evidence to support the findings that wife suffered poor health and could not work full time on a permanent basis, because she presented no documentary evidence or expert testimony about her medical condition. Nothing required wife to present that kind of evidence. She testified in detail about the causes and nature of her ailment, and that is sufficient. We will not disturb the findings, because the trial court was in a better position to evaluate wife's credibility. *See, e.g., Thompson and Thompson,* 103 Or App 458, 460, 797 P2d 1077 (1990).

■ The court did not explain why it selected a period of 54 months before a stepdown in support, nor did it explain why it awarded $100 more per month to begin than wife had requested. The award must be an amount that is just and equitable and that allows wife to enjoy a standard of living that is not overly disproportionate to that enjoyed during the marriage. ORS 107.105(1)(d). The trial court did not explain

how it arrived at 54 months, but we note that the period appears to be the length of time that wife's son will be in high school and college. The stepdown may reflect an anticipation of a decrease from the amount that wife would pay to support her son through college.[5] Although the court had to consider wife's responsibility to her children, it was not authorized to impose a child support obligation in the guise of spousal support.

We conclude that wife is entitled to less support than the trial court awarded her. In the light of the distribution of marital assets, 30 months of support at the rate that she requested should be sufficient for her both to help her children become independent and still maintain a standard of living not overly disproportionate to that she enjoyed during the marriage. *See Richardson and Richardson*, 307 Or 370, 383-84, 769 P2d 179 (1989).

Spousal support modified to $1,000 per month for 30 months from the entry of the original judgment and $750 per month thereafter; otherwise affirmed. No costs to either party.

---

[5] Wife's daughter expects to complete graduate school in 1992.