Argued and submitted November 10, 1993, remanded in part with instructions;
otherwise affirmed August 3, 1994

In the Matter of the Marriage of

Carolyn Janet NIGHTWINE,
*Appellant,*

*and*

Richard D. NIGHTWINE,
*Respondent.*

(C92-2428DR; CA A79784)

879 P2d 877

Carol G. Westendorf argued the cause for appellant. With her on the briefs was Mason, Rowlette, McFarland, Westendorf & Richardson.

David M. Vandenberg argued the cause for respondent. With him on the brief was Thompson, Adams, DeBast & Helzer.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Wife appeals from a dissolution judgment that did not include husband's retirement fund, which was derived from inherited money, as a marital asset to be divided between the parties and from the award of $300 a month in indefinite spousal support. We review *de novo*, ORS 19.125(3), and remand for entry of a modified judgment.

The parties were married 44 years. At the time of trial, husband was 62, and wife was 61. Both are in reasonably good health. There are two adult children. One son is hearing impaired and has lived with his parents, and now his mother, for the past several years. He initially paid rent of $300 per month, but is currently unemployed and is not contributing financially to the household.

Husband is a salesperson. His monthly gross income is $2,107 plus bonuses, calculated as a percentage of the company's profit. During the past three years the bonuses have been as much as $700 a month. Husband expects his next bonus to be smaller, because profits are down. Husband intends to retire at age 65, health permitting. He lists expenses of $1,866 a month.

Wife is a homemaker. She worked outside the home for about six years near the beginning of the marriage, but she has not worked at all in the past 20 years. She does not currently intend to take reduced social security benefits beginning at age 62. She lists expenses of $1,700 a month.

Although the parties never have enjoyed a substantial income, they have been frugal and accumulated a fair amount of savings. Their house is fully paid for. Nine years ago, wife received an inheritance and used it to purchase a car. In 1985, husband also received an inheritance from his father of about $55,000. Husband had seen his father twice since he was three years old. Wife had only seen him once. Husband and wife decided to put $40,000 of that inheritance into a Charter National Life Investment policy (Charter policy). Wife testified that that was part of their overall retirement plan, "same as the rest" of their money, and that husband had not told her that he had intended to segregate the money. The Charter policy is in husband's name only and is currently

worth $65,612. The remaining inheritance money was put into family investments.

At about the same time, wife took $40,000 from their other assets and purchased an annuity in both their names. It is now worth more than $59,000. Husband testified that that annuity was "a plan that [wife] had for herself to retire on."

The trial court ruled that the Charter policy bought with husband's inheritance was a nonmarital asset and awarded it to husband. The court then divided the other assets between the parties. Wife received $232,901. Husband received $214,270 of those assets, plus, of course, the Charter policy. The trial judge explained that he awarded the wife "the long half" of the assets in order to increase her self-sufficiency and to reduce her need for support. He awarded wife $300 a month in indefinite spousal support.

Wife first assigns error to the trial court's determination that the Charter policy, including its appreciated value, was husband's separate property that was not subject to division upon dissolution.

■ ■ ORS 107.105(1)(f) authorizes the trial court to provide:

> "For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

Because husband's inheritance was received during the marriage, it is a marital asset that is subject to the presumption of equal contribution by wife. *Pierson and Pierson*, 294 Or 117, 122-23, 653 P2d 1258 (1982). In this case, husband has overcome the presumption of equal contribution, because the inheritance was acquired by husband alone, "uninfluenced" by wife, and wife has since made no contribution to it. *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982). There is no evidence that wife contributed to the inheritance or was an

362

object of donative intent. *See Graff and Graff*, 71 Or App 194, 198, 691 P2d 520 (1984). Wife's reliance on the fact that husband did not enjoy much of a relationship with his father is misplaced. That fact does not change wife's own lack of contribution. The source of the inheritance was clearly the blood relationship between husband and his father. Husband overcame the statutory presumption of equal contribution.

That does not end the inquiry, however. The Charter policy still is subject to division by the court, if necessary, to effect "a just and proper" distribution of assets. ORS 107.105(1)(f); *Pierson and Pierson, supra*, 294 Or at 123. One reason to subject such property to distribution is when the separate property "has been integrated into the common financial affairs of the parties * * *." *Jenks and Jenks, supra*, 294 Or at 243. This type of integration is more common in a long marriage where "[w]ith each common financial act or decision, * * * the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult." *Jenks and Jenks, supra*, 294 Or at 242. In lengthy marriages, the source of property and the relative contributions of the parties are less important; the focus, instead, turns to achieving a distribution that is as equal as possible. *Steele and Steele*, 92 Or App 532, 537, 759 P2d 304, *rev den* 307 Or 182 (1988); *Bentson and Bentson*, 61 Or App 282, 285, 656 P2d 395, *rev den* 294 Or 613 (1983).

This is just such a case. The parties had their financial lives intertwined for over 40 years. The inheritance did not take place near the end of a marriage, *see Kopplin and Kopplin*, 74 Or App 368, 703 P2d 251, *rev den* 300 Or 162 (1985), or during a long separation, *cf. Lemke and Lemke*, 289 Or 145, 611 P2d 295 (1980), but eight years before the dissolution. The fact that the property is held in husband's name is not determinative. *See Jenks and Jenks, supra*, 294 Or at 241; *Coote and Coote*, 112 Or App 342, 831 P2d 32 (1992).

There is ample evidence that husband's inheritance was made part of the parties' financial planning as a whole. Husband testified that the parties set up a type of "his" and "her" retirement plans; husband's with the inheritance, and wife's with other marital assets. Husband's testimony even reveals confusion as to how the title was held to "wife's"

annuity. He stated that "I think I'm on as a survivor," before being informed that the annuity was jointly owned. Removing husband's Charter policy from the equation disturbs the plan as originally conceived. Husband retains the full value of his plan, while wife's plan became part of the marital assets that she must share. We conclude that the Charter policy is among the marital assets to be divided. Because the trial court awarded wife slightly more than half of the marital assets, excluding the Charter policy, we conclude that a just and equitable division of all the marital assets requires wife to obtain so much of the value of the policy as will equalize the division. Accordingly, on remand, the judgment should be modified to award wife $23,490 of the policy.

Wife next assigns error to the trial court's award of $300 a month spousal support. Wife argues that the length of the marriage, wife's age, her extended absence from the job market to work as a homemaker and the disparity in the parties' earning capacities support an award of $1,000 a month. Husband argues that the trial court's award of $300 a month is more than adequate, because she lived quite frugally during the marriage. According to husband, he routinely gave wife $800 a month with which to pay all of their expenses during their marriage, and she should not require more to live alone. Husband also argues that the trial court's award is adequate, because wife fails to take into account $300 in rental income that she should receive when the adult son who lives with her finds work, as well as $315 in social security benefits she could elect to receive at age 62.

In determining the amount of spousal support, we attempt to arrive at "such amount * * * as may be just and equitable," taking into account a number of factors, including the length of the marriage, the age and health of the parties, the earning capacity of each party, and the extent to which the present and future earning capacity of a party is impaired because of an extended absence from the job market to perform the role of homemaker. ORS 107.105(1)(d).

In this case, wife was 61 at the time of trial. Although she is in reasonably good health, her employment prospects are limited. She has not been employed for 20 years, having worked as a homemaker during that time. She lists current

expenses of approximately $1,700 a month. Husband's argument that those expenses are exaggerated in the light of the parties' ability to live on substantially less than that amount when they were married is not persuasive. The record shows that the parties did not, in fact, successfully live on the money husband gave to wife each month; they relied on interest earnings to pay a number of expenses that could not be covered by the $800. Moreover, wife currently lists expenses, such as medical insurance, that she did not need to pay when she was married.

Wife is capable of earning approximately $600 a month in interest from the income-producing assets the trial court awarded to her. We do not agree with husband that $300 in rental income should be imputed to her; there is nothing in the record indicating that she currently receives that amount or is likely to receive that amount in the future. As for the $315 in potential social security benefits, even if we were to impute that amount to her, it would be insufficient, when combined with the $600 a month in interest income, to pay wife's expenses.

Husband earns $2,107 a month, plus bonuses of up to $700 a month. He also earns $600 a month from the income-producing assets the trial court awarded him. Thus, husband's monthly income is between $2,707 and $3,407, depending on the amount of his bonuses.

Under the circumstances, an award of $300 a month spousal support is inadequate. Given wife's age, her extended absence from the job market to work in the home and the significant disparity in the parties' earning capacities, we find $750 per month to be a just and equitable award of spousal support.

Remanded for entry of modified judgment awarding wife $23,490.50 interest in husband's Charter policy and awarding wife $750 per month indefinite spousal support; otherwise affirmed. Costs to wife.