Argued and submitted January 22, reversed and remanded in part and otherwise affirmed on appeal; affirmed on cross-appeal September 24, 1997

In the Matter of the Marriage of

Rose Ann BUDGE,
*Appellant - Cross-Respondent,*

*and*

Louis J. BUDGE,
*Respondent - Cross-Appellant.*

(94-1626-D-1; CA A91481)

945 P2d 1101

Richard H. Berman argued the cause for appellant - cross-respondent. With him on the briefs were Joseph E. Kellerman and Blackhurst, Hornecker, Hassen & Ervin B. Hogan.

John R. Faust, Jr., argued the cause for respondent - cross-appellant. With him on the brief were Gregory A. Zafiris and Schwabe, Williamson & Wyatt.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

210-b

## LANDAU, J.

Wife appeals a dissolution judgment, assigning error to the trial court's property division and its award of spousal support. Husband cross-appeals, assigning error to the trial court's valuation of certain assets and the award of spousal support. On the appeal, we reverse and remand for entry of a modified judgment concerning the property division and spousal support award and otherwise affirm. On the cross-appeal, we affirm.

At the time of trial, the parties had been married 25 years. Husband was 46, and wife was 45. Their two children are grown and have left home.

Following their marriage in 1970, husband finished college, served in the military and completed an MBA. During those years, wife was a homemaker and provided part-time child care services for others. In 1976, husband's parents encouraged the parties to move to Medford, so husband could work for his parents' business, the Budge-McHugh Supply Company (BMSC). They discussed with husband their intention of eventually allowing him to take over the company and, in recognition of their commitment to him, they gave him 825.5 shares of company stock, then worth $33,020. The parties moved to Medford, and, on January 1, 1977, husband began working at BMSC. Wife worked as a full-time homemaker until the children left home.

In February 1980, husband's parents gave him an additional 100 shares in BMSC, then valued at $5,000. Following that, in December 1984, December 1985, December 1986, December 1992, and February 1993, husband's parents transferred to him an additional 2,492 shares of company stock, valued at the times of transfer at a total of $494,900. The testimony of husband's parents makes clear that those transfers were part of an estate plan to distribute assets to their children with minimal tax consequences.[1] The total

---

[1] The 1984, 1985, 1986 and 1993 gifts each were for amounts that were at, or near, the maximum per donor limit under the United States Tax Code for each of those years. *See* 26 USC § 2503. The 1992 gift was for a substantially larger amount. Husband, his father and their accountant explained, however, that the larger stock transfer was made to take advantage of a lifetime credit against estate taxes.

value of the shares in BMSC at the time of trial was stipulated to be $1,191,307.50. The stock, however, was not readily transferable, it generated no dividends, and the parties made no plans for its ultimate disposition beyond eventual transfer to their children.

Meanwhile, husband's parents made plans to transfer other assets to husband and his two sisters, Barbara and Donna. In particular, husband's parents made plans to transfer assets from the Budge-McHugh Joint Venture (Joint Venture), which owns a substantial amount of real estate that is leased to BMSC. To facilitate the transfer of the real property, in 1982, husband and his two sisters formed the BDL partnership (BDL). Real property was transferred from husband's parents to BDL over the course of the next several years. Husband and wife did not take any distribution from BDL during their marriage, although they did pay taxes on income imputed to husband from the partnership. Both parties testified that the interest in BDL was considered an investment for their retirement or some other use later in life. The value of husband's interest in BDL at the times of transfer was $40,000; its value at the time of trial was $275,147.10.

Beginning in 1988, husband's parents also transferred to their children interests in the Joint Venture itself. The evidence is undisputed that the parents did so as part of their estate plan to take advantage of the tax-free gift allowance. There was no evidence that wife influenced those gifts or that they were connected to husband's employment at BMSC. The value of husband's interest in the Joint Venture at the times of the transfer was $120,212, and its value did not appreciate during the marriage. As with husband's interest in BDL, husband and wife did not receive any money from the Joint Venture during their marriage, although they did pay taxes on imputed income attributable to husband's interest. And, as with husband's interest in BDL, the parties treated the interest in the Joint Venture as an investment for their retirement. The income generated by the Joint Venture, in fact, was transferred to BDL.

The parties also accumulated a substantial quantity of other assets, including $51,892 in a Dain Bosworth

account, $68,725 in bonds, $163,191 in equity in the family residence, four motor vehicles, an airplane, a Lake Tahoe timeshare unit, undeveloped real property, retirement plans valued at approximately $290,000, a separate military retirement account valued at approximately $50,000, and jewelry and other household goods, including $80,000 in guns.

At the time of trial, husband was employed at BMSC and served in the Air Force Reserves. He earned approximately $14,750 per month. Wife has a bachelor's degree in business administration and had taken courses in pursuit of a master's degree. In 1989, she went to work as a bookkeeper and has continued to work at that job since. At the time of trial, she earned approximately $1,000 per month, although the trial court found that she had the capacity to earn as much as $1,800 per month. Wife's earnings do not include benefits.

The trial court awarded wife the equity in the family residence, the bonds, the Dain Bosworth account, two of the motor vehicles, the jewelry and most of the household goods, other than the guns. The court awarded husband the undeveloped real estate, his military retirement account, two of the vehicles and the guns. The trial court ordered that the parties split the value of the remaining retirement plans, the airplane and the Lake Tahoe timeshare unit. The court also awarded husband the BMSC stock and the interests in BDL and the Joint Venture, but also ordered that wife was entitled to half of the appreciation in the value of those assets after they were received. The court then ordered an "equalizing" judgment of $378,438. It further ordered husband to pay spousal support in the amount of $3,500 per month for eight months, followed by $2,725 per month until the equalizing judgment has been paid, followed by an indefinite award of $535 per month. The trial court found that, once the equalizing judgment has been paid, and taking into account the award to her of the bonds and the Dain Bosworth account, wife should have sufficient liquid assets to provide her with an adequate income.

On appeal, wife first assigns error to the trial court's decision to split only the appreciation in the value of the BMSC stock and husband's interests in BDL and the Joint

Venture. She argues that husband failed to rebut the presumption of equal contribution as to those assets and that, in any event, it is just and equitable to order that the full value of those assets—not just their appreciation—be divided equally. Husband argues that he did rebut the presumption of equal contribution as to those assets in the light of the evidence that each was given to him as part of his parents' estate plan and that wife in no way contributed to their acquisition.

■■■ ORS 107.105(1)(f) governs the division of property in a marital dissolution and provides, in part:

> "The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

When one spouse acquires property by gift or inheritance during the marriage, it is a "marital asset" that is subject to the presumption of equal contribution described in ORS 107.105(1)(f). *Pierson and Pierson*, 294 Or 117, 122, 653 P2d 1258 (1982). The presumption may be overcome when the party challenging the presumption establishes by a preponderance of the evidence that one spouse acquired the property "uninfluenced" directly or indirectly by the other spouse. *Stice and Stice*, 308 Or 316, 325-26, 779 P2d 1020 (1989). In determining whether the other spouse influenced the acquisition of a gift of property, we examine whether the other spouse was the object of the donor's intent or otherwise contributed to its acquisition. *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982).

■■■ Whether or not the statutory presumption has been rebutted, ORS 107.105(1)(f) requires that any distribution of marital assets be "just and proper in all the circumstances." *Jenks*, 294 Or at 241-42. Thus, even when the presumption has been rebutted, a gift or other asset may be subject to distribution between the parties in a dissolution action. *Stice*, 308 Or at 326; *Pierson*, 294 Or at 123-24. Particularly in the case of a lengthy marriage, during which the parties incorporated a gift or other asset into their financial affairs or made financial decisions on the assumption that the gift or

asset would form part of a retirement plan, the particular source of the property and the relative contributions to its acquisition become less important, and "the focus, instead, turns to achieving a distribution that is as equal as possible." *Nightwine and Nightwine*, 129 Or App 358, 362, 879 P2d 877 (1994).

■■ With those legal principles in mind, we turn first to the BMSC stock. At least as to the gifts of stock in 1984, 1985, 1986, 1992 and 1993, we find the evidence to be clear that husband's parents did not intend to benefit wife by the stock transfers, that they were part of a larger estate plan to distribute family assets to husband and his two sisters and that wife in no way contributed to the acquisition of those gifts. As to the earlier transfers, in 1976 and 1980, the evidence is not so clear. If anything, the evidence strongly suggests that the initial stock transfers were intended to secure husband's commitment to work in the family business and to reward him for making the decision to do so. Nevertheless, the transfers were not given as compensation for work performed, but instead were given as a future incentive for husband first to commence and later to remain working at the company. In the past, we have regarded such evidence as sufficient to rebut the presumption of equal contribution. *See Powell and Powell*, 147 Or App 17, 22, 934 P2d 612 (1997) (evidence that unvested stock options given as a future incentive, as opposed to a reward for past performance, sufficient to rebut statutory presumption). We find no reason to treat this case differently.

■ The question remains whether it is necessary to award to wife a portion of the value of the stock at the times of transfer to achieve a just and proper division of property, even though husband has rebutted the presumption of equal contribution. We conclude that it is not necessary to do so with respect to the BMSC stock. Although there is evidence that the parties planned to use husband's interests in BDL and the Joint Venture for their retirement, there is no evidence that they had similar intentions with respect to the BMSC stock. That is consistent with evidence that the stock was not easily transferable, that it generated no dividends and that the parties intended that it eventually would be transferred to their children. Under the circumstances, we

find no reason to require the value of the BMSC stock at the times of transfer to be divided between the parties.

■■ We next consider husband's interest in BDL. Once again, we readily arrive at the conclusion that husband has rebutted the presumption of equal contribution. The evidence establishes that the purpose of BDL was to facilitate husband's parents' effort to transfer real property held by the Joint Venture to husband and his two sisters. Wife had no role in acquiring the real estate, and she was not the object of the donors' intent. We nevertheless determine that it is just and proper to divide the value upon receipt of husband's interest in BDL. The evidence showed that, unlike the shares in BMSC, the interest in BDL was income producing, that it was incorporated into the financial affairs of the parties during their marriage and that, for over a dozen years, the parties targeted BDL for retirement funding in the future. Consistent with those intentions, the parties did not take any income from BDL during their marriage, but left all of the income in the partnership for future use. *See Nightwine*, 129 Or App at 362-63 (presumption rebutted, but assets nevertheless subject to distribution because held over long period of time for retirement); *see also Howard and Howard*, 92 Or App 347, 349-50, 758 P2d 416, *rev den* 307 Or 101 (1988) (inherited interest in land sale contract treated as property subject to division because parties integrated the interest into their finances over long period of time).

■■ Finally, we consider husband's interest in the Joint Venture. The testimony was undisputed that the transfers from husband's parents to husband were part of an estate plan designed to maximize their tax-free gift allowance under the federal tax laws. Wife did not influence the gifts in any way nor was she intended to benefit from them. Husband, therefore, has rebutted the statutory presumption of equal contribution. As with the interest in BDL, however, we conclude that it is just and proper to treat husband's interest in the Joint Venture as property that is subject to division between the parties. As with the BDL interest, husband's interest in the Joint Venture was income producing. The parties deferred taking the money out and instead transferred all income to BDL and targeted it for retirement.

■ We conclude, therefore, that the value of husband's interest in BDL and the value of his interest in the Joint Venture as of the times of transfer are properties subject to division between the parties. Because of the length of the marriage and the extent to which the parties commingled the interests into their retirement planning, we see no reason to depart from an equal division of the interests. The value of the interest in BDL at the time of transfer was $40,000, and the value of the interest in the Joint Venture was $120,212. Accordingly, wife is entitled to an increase in the equalizing judgment in the amount of $80,106.

■ Wife also assigns error to the amount of the trial court's award of indefinite spousal support. According to wife, the amount of $535 per month indefinite support is inadequate, given the gross disparity in earning capacities of the parties. Wife asks for indefinite spousal support of $3,500 and argues that it should be no less than $1,000. Husband argues that, because of wife's age, good health and education, there is no reason to perpetuate her financial dependence on him. Accordingly, he requests that the amount of the support remain unchanged and, in his cross-appeal, argues that the duration should be altered to a definite period of no more than three years.

When we set the amount and duration of spousal support, we attempt to arrive at a just and equitable amount. ORS 107.105(1)(d). As we explained in *Christensen and Christensen*, 123 Or App 412, 416, 859 P2d 1192 (1993):

> "We do not attempt merely to eliminate any disparities in the parties' incomes or to enable one spouse to look to the other indefinitely for support. *Wolhaupter-Heinzel and Heinzel*, 108 Or App 514, 521, 816 P2d 672, *rev den* 312 Or 526 (1991). We set the award at an amount that is reasonable and that will enable the party receiving the support to enjoy a standard of living that 'will not be overly disproportionate' to what was enjoyed during the marriage, to the extent that is practicable. ORS 107.105(1)(d)(F); *Grove and Grove,* 280 Or 341, 350, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977). We set the duration of that award 'on terms that are equitable between the parties,' taking into account both need and ability to pay and keeping in mind 'the goal of ending the support-dependency relationship

within a reasonable time if that can be accomplished without injustice or undue hardship.' *Grove and Grove, supra,* 280 Or at 353."

Several factors are relevant to our consideration of the amount and duration of support, including the age and health of the parties, the length of the marriage, the parties' relative earning capacities, the extent to which one spouse has suffered an impairment in earning capacity because of absences from the job market to attend to family needs and the overall financial circumstances of the parties. ORS 107.105(1)(d)(A)-(M).

In this case, it is true that both parties are healthy, educated and without dependent children. However, husband's earning capacity is significantly greater than wife's, and, because of her long absence from the job market, there is no reasonable likelihood that wife's earning capacity will improve significantly. In that regard, we note that the trial court did find that wife's earning capacity is $1,800 per month, although there is no evidence that she ever has earned that much. The only support for that figure is husband's own speculation that wife is capable of earning more than she currently does. Wife will receive substantial assets in the form of liquid, income-producing awards of cash, but, without requiring her to sell principal, the potential earnings from those assets are not sufficient, when combined with her earning capacity, to cover her reasonable expenses, much less provide for a standard of living that is not overly disproportionate to what she enjoyed before the dissolution. We conclude that the trial court's decision to award indefinite spousal support was appropriate. We also conclude, however, that the amount of the indefinite portion of the award should be increased to $1,500 per month, particularly in the light of our finding that wife's earning capacity is not as significant as the trial court found. *See Mask and Mask,* 143 Or App 377, 381-83, 923 P2d 1304 (1996).

On cross-appeal, husband also assigns error to the manner in which the trial court valued the BMSC stock at the times of transfer. According to husband, the trial court adopted the values reported to the Internal Revenue Service

(IRS) as the value of each gift at the time of transfer. Husband argues that such a valuation is incorrect because, "[a]s every lawyer knows * * * it is customary and proper" to report to the IRS values that are less than the fair market value at the time of transfer. As a result, he argues, the trial court's valuation had the effect of inflating the appreciation in the value of the stock, which he has conceded is appropriately subject to division between the parties.

Husband does not cite, nor can we find, authority for the argument he asserts. To the contrary, the IRS has held that the value of property at the date of a gift "is the price at which such property would change hands between a willing buyer and a willing seller." Treas. Reg. § 25.2512-1. We find no reason to assume that what the parties reported to the IRS at the times of transfer was not what the law required.

On appeal, reversed and remanded for entry of modified judgment awarding wife an equalizing judgment of $458,544 and increasing to $1,500 per month the amount of indefinite spousal support starting upon payment of the equalizing judgment and otherwise affirmed; affirmed on cross-appeal. Costs to wife.